STATE OF CONNECTICUT *v.* CHRISTOPHER LEECAN
(11612)

PETERS, C. J., SHEA, SANTANIELLO, CALLAHAN and M. HENNESSEY, Js.

Argued November 6, 1985—decision released February 4, 1986

*Richard Emanuel,* special public defender, for the appellant (defendant).

*Judith Rossi,* special assistant state's attorney, with whom were *Julia D. Dewey,* assistant state's attorney, and, on the brief, *Arnold Markle,* state's attorney, for the appellee (state).

SHEA, J. The defendant was convicted after a jury trial of felony murder in violation of General Statutes § 53a-54c. In his appeal from the judgment the defendant claims error: (1) in the admission of evidence of his pre-arrest and postarrest silence with respect to the murder accusation; (2) in the admission of evidence of (a) threats claimed to have been made by the defendant against a witness for the state, (b) the existence of outstanding arrest warrants against the defendant for unrelated crimes, and (c) his arrests for prior felonies; (3) in charging the jury on felony murder without mentioning the affirmative defenses to that crime set forth in § 53a-54c as well as in explaining what is meant by a reasonable doubt; and (4) in the ineffective assistance rendered at trial by defense counsel.[1] We find no error.

---

[1] The attorney representing the defendant on appeal did not represent him at trial.

This defendant was convicted of the felony murder of the same person, Raymond Lovell, who was the victim of the crime in *State* v. *Spencer,* 198 Conn. 506, 503 A.2d 1165 (1986), wherein this court affirmed the conviction of Theresa Spencer at a separate trial as a participant in the same offense of felony murder. The facts, set forth in greater detail in that opinion, may be briefly summarized for the purpose of this appeal.

The jury could reasonably have found from the evidence that on December 11, 1980, Raymond Lovell was found dead in his room at the Holiday Inn in New Haven. He had been bound with handcuffs and a cord, gagged, his head covered with a pillow case, and beaten on the head with a blunt object, causing injuries that resulted in his death.

On December 8, 1980, three days before Lovell's body was discovered, the defendant had driven to New Haven from Philadelphia, accompanied by Lawrence Nowlin and Theresa Spencer. The defendant brought with him a set of handcuffs, a metal pipe and a handgun. Nowlin and Spencer testified in behalf of the state at the defendant's trial and provided most of the evidence of his involvement in the crime.

The trio spent the night of December 8 in New Haven at the home of an acquaintance of Spencer. They had initially intended to rob this person, but later abandoned the plan. On December 9, Spencer contacted Lovell, the victim, whom she had met previously while working for a magazine sales organization that also employed him. She spent that night with Lovell in his motel room.

The next day, December 10, she rejoined Nowlin and the defendant at the motel where they were then staying. The defendant, with Nowlin and Spencer, drove to the Holiday Inn where Lovell was staying. Lovell

did not return to the motel until the late afternoon, at which time he spoke with Spencer about her returning to his room that evening.

The defendant, observing that Lovell wore expensive clothing and jewelry and drove a Cadillac, expressed his intention of robbing Lovell with the assistance of Nowlin and Spencer. The trio returned to the Holiday Inn at about 8 p.m. that evening. Spencer entered Lovell's room while Nowlin and the defendant remained in the car. After some period of time, Nowlin knocked on the door of the room and Spencer let him and the defendant into the room. The defendant used the bathroom and, when he emerged, he held a handgun. He demanded that Lovell give him his money and his drugs. Lovell was bound, gagged and blindfolded by placing a pillow case over his head. The defendant then struck Lovell several times on the head with an iron pipe. Assisted by Nowlin and Spencer, the defendant searched the room and removed some of Lovell's jewelry and clothing, which they placed in the trunk of the defendant's car. One of his accomplices drove Lovell's Cadillac and followed the defendant, who was driving his own car. After it had been searched, the Cadillac was abandoned on the Merritt Parkway. The trio then returned to Philadelphia.

The defendant testified at trial in support of his alibi defense that, at the time when the crime was committed, he was waiting for Nowlin and Spencer at a bar located near the motel where Lovell resided. He said that they had used his car to pick up some possessions of Spencer at the motel and that, when they returned, the trio drove back to Philadelphia. He also testified that, at the time he learned of the murder several weeks later, when the trio was in North Carolina, both Spencer and Nowlin made statements indicating their involvement in the robbery and murder of Lovell.

## I

The defendant claims that certain questions put to him on cross-examination to show that his alibi was of recent contrivance and to attack his credibility violated his constitutional right to remain silent under the strictures of *Doyle* v. *Ohio,* 426 U.S. 610, 617–18, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). *Doyle* held that postarrest silence is "insolubly ambiguous" because it may have been nothing more than the exercise by an arrestee of his right to remain silent in the wake of the customary warning of his rights given at the time of his arrest pursuant to *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Long before these decisions this court had reached a similar conclusion, on nonconstitutional grounds, that evidence of silence when an accused is in custody is inadmissible. *State* v. *Ferrone,* 97 Conn. 258, 266, 116 A. 336 (1922). Under such circumstances, "our law accords him the right to reply to question or statement, or to remain silent. His silence under such circumstances cannot be laid in evidence against him." Id; see *State* v. *Morrill,* 197 Conn. 507, 535–36, 498 A.2d 76 (1985); *State* v. *Cook,* 174 Conn. 73, 76, 381 A.2d 563 (1977).

## A

The defendant seeks to extend the prohibition against evidence of postarrest silence of an accused to the period prior to his arrest. He acknowledges that such a claim, when based upon federal constitutional provisions guaranteeing the right of an accused to remain silent and to due process of law, has been rejected. *Jenkins* v. *Anderson,* 447 U.S. 231, 235, 100 S. Ct. 2124, 65 L. Ed. 2d 2486 (1980); *Raffel* v. *United States,* 271 U.S. 494, 496–97, 46 S. Ct. 566, 70 L. Ed. 1054 (1926). He maintains, however, that analogous provi-

sions of our state constitution, article first, § 8,[2] should be construed to afford greater protection to these rights of an accused than the federal constitution has provided. The defendant points to no history relating to our state constitution nor to any significant differences from their federal counterparts in the language of the state constitutional provisions relied upon that might warrant a different interpretation. Although this court recognized under principles of the law of evidence the ambiguity inherent in the postarrest silence of an accused long before the advent of *Miranda* warnings, which add a further dimension of unfairness to its use by the prosecution, we have, nevertheless, followed the general principle that pre-arrest silence under circumstances where one would naturally be expected to speak may be used either as an admission or for impeachment purposes. McCormick, Evidence (3d Ed.) §§ 160, 270. "When a statement, accusatory in nature, made in the presence and hearing of an accused, is not denied or explained by him, it may be received into evidence as an admission on his part." *State* v. *Cook,* supra, 76; *State* v. *Yochelman,* 107 Conn. 148, 152, 139 A. 632 (1927). The circumstances, of course, must be such that a reply would naturally be called for even in the pre-arrest setting. *State* v. *Vitale,* 197 Conn. 396, 405–406,

[2] "[Conn. Const., art. I] (Rights of accused in criminal prosecutions. What cases bailable. Speedy trial. Due process. Excessive bail or fines. Presentment of grand jury, when necessary.) Sec. 8. In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

497 A.2d 956 (1985). "Although evidence of silence in the face of an accusation may be admissible under the ancient maxim that 'silence gives consent' the inference of assent may be made only when no other explanation is consistent with silence." *State* v. *Harris,* 182 Conn. 220, 229, 438 A.2d 38 (1980). We can perceive no violation of any constitutional right, state or federal, in our continued adherence to these rules.

The additional claim of the defendant, that evidence of his pre-arrest silence was introduced without satisfying the evidentiary standards for admissibility requiring proof of circumstances naturally calling for him to speak, does not involve a claimed violation of any constitutional right. The failure of the defendant to raise any objection in the trial court to the prosecutor's inquiries on this subject precludes appellate review. Practice Book § 288. We are not convinced that we should invoke our authority to notice "plain error" in accordance with Practice Book § 3063, because, if objection had been raised, the state would have had an opportunity to supplement the foundation shown by the present record for the admission of such evidence.

### B

The first claimed violation of the defendant's right of postarrest silence as delineated in *Doyle* v. *Ohio,* supra, relates to his responses on cross-examination to questions concerning his failure to inform the police at the time he "turned himself in" that the car that had been observed at the Holiday Inn in New Haven at the time of the murder was owned by him rather than his uncle, in whose name it had been registered. In presenting its case the state had called Paul Leecan, the defendant's uncle, who testified that he took title to the automobile, which the defendant had purchased on July 6, 1980, at the request of the defendant and that he had used the car for only a few days

afterward. Paul Leecan also testified that the defendant had told him that he was going to Connecticut to surrender himself to the police and that he would clear up any involvement arising from the registration of the car in the name of his uncle.

On cross-examination the defendant admitted telling Paul Leecan that he was going to Connecticut "to straighten that out." This response was followed by the question at issue: "And, of course, you immediately came forward then and helped straighten that out, that it wasn't his car, in March of 1981 when you turned yourself in?" Defense counsel objected that the question constituted an impermissible comment on the defendant's right to remain silent by highlighting the fact that the defendant, unlike his confederates, Nowlin and Spencer, had never given any statement to the police. The state claimed the question to be related to the credibility of the defendant. The court overruled the objection and defense counsel duly excepted. He also moved for a mistrial, which the court denied. When the question was read back to the defendant on the witness stand, he responded that, at the time, he "was advised by an attorney not to give any statement whatsoever." The prosecutor also elicited, without further objection being raised, that the answer to his question was "No."

Although the defendant relies upon the *Doyle* principle that silence following *Miranda* warnings is "insolubly ambiguous" and, therefore, cannot be used by the prosecution, he concedes that the record in this case does not disclose whether any such warnings were given or when they may have been given. In *Fletcher* v. *Weir,* 455 U.S. 603, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982), the United States Supreme Court held that the absence of any indication in the record that the silence of a defendant had been preceded by a *Miranda* warning rendered *Doyle* inapplicable, even though the

inquiry of the prosecutor pertained to the time of arrest. "In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." Id., 607. This clarification of the scope of *Doyle* was not envisioned by this court in *State* v. *Cook,* supra, 76–77, when we held that it was not essential for the record to disclose at what point or whether *Miranda* warnings were given to a defendant when his postarrest silence is the subject of a prosecutorial inquiry. Our holding in *Cook,* that a defendant's federal constitutional rights are infringed by questions relating to postarrest silence even in the absence of *Miranda* warnings, must accordingly be modified.

The defendant urges that we continue to abide by our holding in *Cook* as a matter of state constitutional law or as a rule of evidence. In *Cook* the failure to except to the evidentiary ruling allowing inquiry concerning postarrest silence required treatment of the claimed error on appeal as the deprivation of a fundamental constitutional right, for which review was available under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). This circumstance, however, does not indicate that any distinct state constitutional right was implicated, because *Doyle* was plainly viewed as applicable, thus making the issue cognizable as a federal constitutional claim. *Cook* does not refer to our state constitution even as an additional ground for its holding.

As we have previously noted in dismissing the defendant's claim that pre-arrest silence should be accorded state constitutional protection, there is no historical or lexicological basis for different treatment of the parallel provisions of our state and federal constitutional provisions pertaining to the right of an accused to

remain silent under the circumstances of this case. We are also not persuaded that contemporary considerations of social policy and the administration of the criminal justice system in this state warrant a broader view of our state constitutional provisions in the context of postarrest silence. Putting a constitutional gloss upon every postarrest silence inquiry makes it possible for defense counsel to sit back without voicing objection when such questions are asked, secure in the knowlege that his neglect may well provide his client with an opportunity to overturn an unfavorable verdict on appeal. See *State* v. *Evans,* supra, 67. Our experience with claims of error under *Doyle* indicates a widespread failure of defense counsel to alert the trial court by a proper objection and exception when improper inquiries concerning the silence of an accused are made. We, therefore, decline in this instance to afford under our state constitution greater protection for the right of postarrest silence than is available under our federal constitution.

We agree with the defendant, nevertheless, that the view we expressed in *State* v. *Ferrone,* supra, 266, that postarrest silence is inadmissible under principles of the law of evidence, is sound. Because many persons, even in the absence of a *Miranda* warning, are aware of their right to remain silent and are frequently advised by counsel to exercise that right when arrested, the custodial setting is simply not an occasion when the circumstances naturally call upon a defendant to speak or to reply to police inquiries. Accordingly, there is ordinarily no reasonable basis to infer that a defendant's silence in such a situation indicates that he acknowledges the truth of some assertion implicit in a question asked by a police officer. Since *Ferrone* is grounded upon the rules of evidence and does not purport to establish a constitutional principle, a defend-

ant must seasonably object and take exception to an adverse ruling in order to obtain appellate review of his claim of error in this respect.

The defendant did object to the prosecutor's inquiry in this case concerning his failure to "straighten out" the problem created for his uncle by the registration of the car in his name. He also excepted to the ruling allowing the question. The basis for his objection, however, was not a claim of *Doyle* silence or the impropriety of inferring an admission from the defendant's failure to speak once he had been arrested. His objection was that the question amounted to an impermissible comment on the defendant's right to remain silent under the fifth amendment to the federal constitution because it drew attention to the fact that the defendant, unlike his confederates, Nowlin and Spencer, had given no statement to the police. In addition to this departure from the requirements of Practice Book § 288, the defendant has failed to persuade us that the error was probably harmful to him. The subject of the inquiry, the defendant's failure to inform the police that his uncle had never actually owned the car registered in his name, can hardly be regarded as very critical to the determination of guilt. The defendant's failure to fulfill a promise made to his uncle could have had only slight effect upon his credibility and no effect in establishing his guilt. He had conceded in his direct testimony that the car used by him and his associates, Nowlin and Spencer, belonged to him. We conclude that, although the court erred in allowing the question, the circumstances do not indicate that the error was probably harmful as required for a reversal where no constitutional right is involved. *State* v. *Brown,* 187 Conn. 602, 611, 447 A.2d 734 (1982); *State* v. *Gordon,* 185 Conn. 402, 419, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982).

## C

The remaining violations of his right of silence claimed by the defendant relate to his testimony on direct examination that he had remained at a bar in New Haven while Nowlin and Spencer went to see Lovell, the victim, at the motel where he resided in order to retrieve Spencer's personal belongings as well as a paycheck owed to her by her former employer. On cross-examination the defendant testified that he had first learned of the murder when he was in North Carolina in late December, 1980, or in early January, 1981. The prosecutor then asked a series of questions concerning whether the defendant had gone to the police when he learned of the murder to explain that he was not involved in the crime and to give such information as he had about the activities of Nowlin and Spencer. The defendant responded negatively several times, but then, in response to a question of whether he had "come forward to any authorities" to reveal his information, he said: "Not until I turned myself in in March. No, I didn't." The cross-examination proceeded:

"Q. And in March, did you tell them that?

"A. No, I didn't tell them anything. I was under the advice of an attorney.

"Q. So you never said it until you were sitting here?

"A. As a result of the advice of my attorney.

"Q. Well, sir, let me ask you this: From January 15 to the date of March 3, forgetting when you turned yourself in, up to March 3, did you ever go forward and say, 'Hey, I've got some information concerning that accident that took place in New Haven? . . .'

"A. No, I didn't. . . .

"Q. And you did nothing to clear this case up, did you, during that period of time that you were free and roaming the streets?

"A. Not until I turned myself in, no, sir.

"Q. You didn't do anything then, did you?

"A. Under the advice of an attorney, no, sir."

During the remainder of the cross-examination the state repeatedly questioned the defendant about his failure to "come forward" to inform the police about his knowledge of the murder, but these questions clearly focused upon the period prior to March 4, 1981, when the defendant surrendered himself to the New Haven police, except in two instances:

"Q. Did you do one thing to clear your name right after you found out about this?

"A. No, I didn't.

"Q. In all of January?

"A. No, sir, I didn't.

"Q. In all of February?

"A. No, sir, I didn't.

"Q. March first?

"A. No, sir.

"Q. Second?

"A. No, sir.

"Q. Third?

"A. No, sir.

"Q. *And this is the first time you've told this story?* [Emphasis added.]

"A. Yes, sir.

* * *

"Q. And there was nothing you ever did to clear your name right from the moment you heard the accusations against you to the moment that you surrender *to the day you testified?* [Emphasis added.]

"A. When you say 'heard the accusations against me,' I don't understand that.

"Q. You didn't know that you had been accused in this case?

"A. Oh, yes.

"Q. When did you first learn that?

"A. When I was in North Carolina.

"Q. And, of course, you called and said to the sheriff, 'Hey, I've got some information that I want to get to the New Haven Police?'

"A. No, sir, I didn't.

"Q. You called the New Haven Police and said, 'I'd like to talk to you guys?'

"A. No, sir, I didn't.

"Q. You called the State's Attorneys Office and said, 'I'd like to talk to you?'

"A. No.

"Q. You called the Public Defenders Office and said, 'I've got some information that I think will clear me?'

"A. No, sir, I didn't."

At no time did defense counsel object to any of the questions that related to the defendant's failure to make a statement to the police after he submitted himself to their custody. The defendant explained simply that he was following the advice of counsel. Though these inquiries were objectionable under the principles of *State* v. *Ferrone,* supra, the absence of a seasonable

objection and exception precludes reliance upon them in this appeal. Practice Book § 288. The defendant claims, however, that the questions about his postarrest silence violated his constitutional rights as delineated in *Doyle* v. *Ohio,* supra, and that he thus is entitled to review pursuant to *State* v. *Evans,* supra. We have held *Doyle* violations reviewable under *Evans. State* v. *Morrill,* 197 Conn. 507, 536, 498 A.2d 76 (1985); *State* v. *Zeko,* 177 Conn. 545, 553, 418 A.2d 917 (1979).

As we have previously noted, the record in this case does not indicate that the defendant ever received a *Miranda* warning, the necessary predicate to reliance upon *Doyle. Fletcher* v. *Weir,* supra, 607. Aware of this deficiency, the defendant urges that we take judicial notice of the probability that at some point between his arrest and his trial he would have been advised of his constitutional right to remain silent and told that his silence could not be used against him. He refers to General Statutes § 54-1b and Practice Book § 637, which require an accused at the time of arraignment to be informed that he is not obliged to say anything and that anything he says may be used against him. We do not regard the advice given by a court or a clerk pursuant to these provisions as the functional equivalent of a *Miranda* warning given by the police prior to custodial interrogation. It is not as explicit, and is thus not so likely to induce silence in reliance upon it. Furthermore, the defendant in this case testified that he had disclosed nothing to the police, not because of any official warning received at arraignment or at any other time, but because his attorney advised him to remain silent. It appears, therefore, that neither the police nor any other government personnel can reasonably be deemed to have induced the defendant's postarrest silence, as is essential to support a claimed violation of *Doyle. Fletcher* v. *Weir,* supra.

We are also not convinced that, in the context of the entire cross-examination, even if the record demonstrated that a *Miranda* warning had been given by the police to the defendant at the time of his arrest, a *Doyle* violation would have occurred. It was not until the defendant, in response to a question that appears to have been related to his pre-arrest silence, declared that he had not "come forward" and given his information to the police "until I turned myself in in March" that the prosecutor asked his first questions about post-arrest silence. The implication of the defendant's answer, in the absence of clarification by these questions, was that he had revealed what he knew about the murder at the time he surrendered to the police or thereafter. "It goes almost without saying that the fact of postarrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest." *Doyle* v. *Ohio,* supra, 619 n.11. In this case the defendant's unsolicited response that he had given no information about the crime "until" he was taken into custody falls within the parameters of this exception to the prohibition against use of postarrest silence. The follow-up questions focusing upon the period after the arrest were essential in order to clarify the ambiguous response of the defendant. On the two later occasions, when a series of questions concerning his pre-arrest silence included single references also to his postarrest silence, the defendant cannot be said to have invited these postarrest inquiries by his responses. Since these questions were merely repetitious of those asked following the defendant's initial ambiguous response, however, we conclude that the later inquiries

were harmless beyond a reasonable doubt. See *Schneble* v. *Florida,* 405 U.S. 427, 431, 92 S. Ct. 1056, 31 L. Ed. 2d 340 (1972); *State* v. *Pellegrino,* 194 Conn. 279, 291–92, 480 A.2d 537 (1984); *State* v. *Randolph,* 190 Conn. 576, 589–90, 462 A.2d 1011 (1983); *State* v. *Zeko,* supra, 554–58.

## II

The remaining claims of the defendant regarding improper evidence, which do not implicate any constitutional right, relate to the admission of: (1) a letter containing a threat against a witness for the state; (2) evidence of outstanding warrants for the arrest of the defendant upon unrelated criminal charges; and (3) evidence of other prior felony arrests.

## A

The defendant claims that a letter, received by Theresa Spencer while her trial was in progress, that contained a statement of the defendant's intention to seek reprisal against an unnamed "snitch" was improperly admitted in evidence. The first ground of objection is authenticity, that there was insufficient proof that the defendant had authored the letter. The defendant concedes that at the time the letter was admitted there was a sufficient evidentiary foundation for its admission in the testimony of Spencer that she recognized the letter to be in the defendant's handwriting and that the fictitious name, "Gemini," signed by the sender was one the defendant sometimes used as a nickname. Later in the trial a handwriting expert testified that the handwriting on the letter and envelope was not that of the defendant. The state conceded the validity of this opinion but maintained that the defendant's authorship of the letter was amply proved by its contents and the use of the defendant's nickname. Though no motion to strike the exhibit was made, the defendant urges us to treat the court's failure to do so sua

sponte as "plain error." See Practice Book § 3063. We see no basis for doing so, because the defendant's connection with the letter is sufficiently established by its contents and the circumstances under which it was received.

The defendant also claims that the court abused its discretion in admitting the letter because its probative value was minimal in comparison to its prejudicial effect. On several occasions this court has approved the admission of threats against or attempted intimidation of witnesses as evidence of consciousness of guilt. *State v. Maturo,* 188 Conn. 591, 598, 452 A.2d 642 (1982); *State v. Brokaw,* 181 Conn. 475, 479, 436 A.2d 6 (1980); *State v. Sorbo,* 174 Conn. 253, 256, 386 A.2d 221 (1978); *State v. Moynahan,* 164 Conn. 560, 597, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973); *State v. Holliday,* 159 Conn. 169, 173, 268 A.2d 368 (1970). These cases amply support the court's exercise of discretion in admitting evidence of the defendant's intention to seek reprisal against Nowlin for testifying on behalf of the state. The letter is also significant in showing the relationship between Spencer and the defendant during the period before their arrest. We reject this claim of error.

### B

Prior to the testimony of Paul Leecan, the defendant's uncle, the defendant obtained an in limine ruling that the state would not be permitted on direct examination of this witness to show that the reason the car used in perpetrating the crime had not been registered in the name of the defendant was the existence of some outstanding warrants for his arrest. Accordingly, no mention was made of any outstanding arrest warrants during the presentation of the state's case.

During cross-examination of the defendant, however, the state's attorney, without objection, asked why the

car title had been placed in Paul Leecan's name. The defendant responded "personal reasons" and, upon further inquiry, "insurance purposes." When asked if that was the only reason, he answered affirmatively. The prosecutor then referred to the "representations" made by counsel for the defendant that the reason for using the uncle's name "may have been that there was an outstanding arrest warrant for my client." At this point defense counsel objected and the jury was excused.

The trial court deferred ruling on the objection until a transcript of defense counsel's remarks during the in limine proceeding could be obtained. Cross-examination of the defendant before the jury continued in the interim and he testified further that the car was not registered in his name because he was under twenty-five years of age at the time and, thus, it was cheaper to use his uncle's name. Later, the court, after reviewing the in limine proceeding, ruled that the state's attorney would be permitted to inquire as to whether the existence of outstanding arrest warrants was the reason the car had not been registered in the defendant's name in view of his testimony of a different reason. The defendant excepted to the ruling.

We conclude that the trial court could have reasonably viewed the earlier statement of defense counsel, made in the presence of the defendant, as inconsistent with the defendant's testimony that the sole reason for the false registration was to reduce the cost of insurance. The court could reasonably assume that defense counsel's statement was based upon information given to him by the defendant and thus evidenced a statement made by the defendant. The inquiries concerning the arrest warrants were, therefore, permissible for the purpose of attacking the credibility of the defendant. *State* v. *Reed,* 174 Conn. 287, 302, 386 A.2d 243 (1978); *State* v. *Keating,* 151 Conn. 592, 597, 200

A.2d 724 (1964), cert. denied sub nom. *Joseph* v. *State,*
379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557 (1965).

In a related ruling, the court allowed a deputy sher-
iff to testify that he had overheard a statement of the
defendant during the luncheon recess that followed his
testimony that his car had been registered in his uncle's
name for insurance purposes. The defendant had spo-
ken to his attorney in the elevator while the sheriff was
also present. The defendant was reported to have said
that "he couldn't have said anything about the out-
standing warrants" and that, if he had done so, "that
would have been it, wouldn't it have?" The court over-
ruled defense counsel's objection that the statement
was a privileged communication, a ground for exclu-
sion that has been abandoned on appeal. Belatedly the
defendant now argues that the court abused its discre-
tion in balancing the probative value of this evidence
against its prejudicial effect, seeking review under the
"plain error" principle. Practice Book § 3063. In view
of the other evidence on the same subject that we have
held admissible, this additional testimony was not of
such significance that justice requires us to overlook
the failure to state in the trial court the ground of objec-
tion relied upon in the appeal. Practice Book § 288. We
decline to review this claim of error further.

### C

The defendant claims that the court erred in permit-
ting the state's attorney to cross-examine him about
his prior felony arrests. On direct examination he had
testified that "this [was] the first time [he] ever saw
a trial" and that he had never been in jail before. The
court ruled that the inquiries concerning the defend-
ant's prior arrests were pertinent in view of the defend-
ant's testimony that he was a newcomer to the courts.
No exception was taken to this ruling, however, and
we shall not review it further. Practice Book § 288. The

defendant claims no violation of any constitutional right nor any plain error that would allow review of this claim in the absence of an exception. See Practice Book § 3063; *State* v. *Evans,* supra.

## III

The defendant also claims that the court erred in its charge to the jury in three respects, two of which were not properly raised in the trial court. Despite his arguments to the contrary, we are not persuaded that any of the claimed errors belatedly raised on appeal qualify for review as issues involving the denial of a fundamental constitutional right under *State* v. *Evans,* supra, or as "plain error" under Practice Book § 3063.

## A

Despite the absence of a request to charge or an exception to the charge as given, the defendant claims error in the failure of the court to charge upon the affirmative defense to a felony murder charge, as set forth in General Statutes § 53a-54c.[3] We have recently indicated that a failure to charge upon an affirmative

---

[3] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

defense, in the absence of a request or an exception, does not amount to the denial of a fundamental constitutional right and, therefore, does not qualify for review under *Evans. State* v. *Preyer,* 198 Conn. 190, 196–97, 502 A.2d 858 (1985). The circumstances also do not warrant application of the "plain error" doctrine, because the only evidentiary basis for this affirmative defense was the defendant's testimony in support of his alibi, which the jury's verdict implicitly rejected. See *State* v. *Valeriano,* 191 Conn. 659, 664, 468 A.2d 936 (1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984).

B

The defendant also claims error in the charge upon reasonable doubt, to which no exception was taken, in two respects: (1) the definition of a reasonable doubt as "a doubt for which a reasonable man can give a valid reason"; and (2) the failure to mention that a reasonable doubt may arise from the lack of evidence when charging that it is not a doubt "unwarranted by the evidence" and is a doubt "founded on the evidence." The defendant claims that these instructions impermissibly lowered the constitutionally mandated standard of proof beyond a reasonable doubt that the state must sustain in order to support a conviction. *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Despite the failure to raise the issue in the trial court, such a claim does necessitate review for the limited purpose of determining whether a fundamental constitutional right has been infringed. *State* v. *Hinckley,* 198 Conn. 77, 86–87, 502 A.2d 388 (1985); *State* v. *Evans,* supra, 69.

This court has held that an instruction that a reasonable doubt is "one for which you can, in your own mind, conscientiously give a reason" does not violate any constitutional right of a defendant. *State* v. *Derrico,* 181

Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). Although more recently the instruction has been criticized; *Adams* v. *South Carolina,* 464 U.S. 1023, 104 S. Ct. 558, 78 L. Ed. 2d 730 (1983) (Brennan and Marshall, Js., dissenting from denial of certiorari); *Butler* v. *South Carolina,* 459 U.S. 932, 103 S. Ct. 242, 74 L. Ed. 2d 191 (1982) (Marshall, J., dissenting from denial of certiorari); we are not persuaded to change our view that, in the context of the whole charge on reasonable doubt, such an instruction violates no constitutional right.

Our analysis of the failure to instruct that a reasonable doubt may arise from the lack of evidence in a case as well as from the evidence produced is similar. We do not believe that this omission rendered the charge on reasonable doubt so defective as to violate the defendant's constitutional right to a fair trial. See *State* v. *Evans,* supra.

## C

The defendant did take exception to the trial court's "missing witness" instruction with respect to his failure to produce his wife as a witness. The state had requested such an instruction in accordance with *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960), and had obtained permission in accordance with *State* v. *Daniels,* 180 Conn. 101, 113–14, 429 A.2d 813 (1980), to argue that an inference should be drawn from the absence of the defendant's wife as a witness. The defendant excepted to the charge on two grounds: (1) the failure of the state to demonstrate that the defendant's wife was available to testify; and (2) the absence of any indication that his wife's testimony would relate to any material issues in the case.

The defendant testified that he had lived with his common-law wife in Philadelphia for eight years and that they had one child. Since the time of his arrest

his wife and child had continued to occupy the same residence that he had shared with them previously. There was also evidence of continuing communication and a cordial relationship between the defendant and his wife since he had been in prison. The fact that his wife resided in another state did not render her unavailable as a witness. *State* v. *Bennett,* 171 Conn. 47, 56–57, 368 A.2d 184 (1976); see General Statutes § 54-82i. We conclude that there was sufficient evidence of availability of the witness to satisfy this requirement of *Secondino.*

With respect to the materiality of the testimony of the defendant's wife, it appears that she might have been able to support his claim that he had separated from Nowlin and Spencer prior to learning of their arrest and had returned to Philadelphia with the intention of surrendering to the police in order to respond to the charges against him. The defendant testified that his wife sent him some money so that he could return from Florida to his home by bus. He also said he first learned of the apprehension of Nowlin and Spencer from his wife some time after he had come back to live with her in Philadelphia. Her testimony, therefore, could reasonably have been viewed as sufficiently important to warrant an unfavorable inference from the failure to produce her as a witness with respect to those aspects of the defense claim.

The defendant also claims that the content of the "missing witness" charge was deficient in that the court failed to limit the doctrine to a witness who would naturally be produced because of his possession of "peculiar or superior information material to the case which, if favorable, the party would produce." See *Secondino* v. *New Haven Gas Co.,* supra, 675. Because of the failure to except to the charge on this ground, however, we shall not review this claim of error. Practice Book § 854. The omission relied upon does not

involve any constitutional right nor is it of such significance that we should review it as "plain error." Practice Book § 3063.

## IV

The final claim of the defendant is that he was denied the effective assistance of counsel. "This court has emphasized in other cases that a claim of ineffective assistance of counsel is more properly pursued on a petition for new trial or on a petition for a writ of habeas corpus rather than on direct appeal." *State* v. *Mason,* 186 Conn. 574, 578–79, 442 A.2d 1335 (1982); *State* v. *Just,* 185 Conn. 339, 370–71, 441 A.2d 98 (1981). The trial transcript seldom discloses all of the considerations of strategy that may have induced counsel to follow a particular course of action.

The defendant appears to have been concerned that his failure on appeal to raise any ineffective assistance claims that the record adequately supports might be regarded as a deliberate bypass of the appellate remedy, which would preclude review of them in a habeas corpus proceeding. See *State* v. *Gethers,* 193 Conn. 526, 541, 480 A.2d 435 (1984). We have recently relaxed the deliberate bypass rule in cases in which the sole claim for relief from a criminal conviction is a claim of ineffective assistance of counsel. *State* v. *Rivera,* 196 Conn. 567, 571, 494 A.2d 570 (1985). In this appeal the defendant has raised several grounds for setting aside his conviction in addition to his claim of incompetent counsel and, thus, *Rivera* is not controlling. On further consideration, however, we have decided once more to lower this barrier to habeas corpus relief. It is preferable that all of the claims of ineffective assistance, those arguably supported by the record as well as others requiring an evidentiary hearing, be evaluated by the same trier in the same proceeding. A defendant should not be required to await the outcome of his appeal upon

other issues before pursuing his claim of incompetent counsel. If his claim is meritorious, he may often obtain relief in the trial court before his appeal on other issues can be heard, thus mooting such an appeal. An appeal by the state or the defendant from the determination of the incompetency of counsel question may also be joined with a pending appeal from the judgment of conviction, thus allowing a single resolution on appeal of all the claims of error that have been raised.

In view of this modification of our procedure in regard to ineffective assistance claims, we shall not review at this time even the portion of the defendant's ineffective assistance claim that he contends is adequately supported by the record. Though we have resolved his other claims of error, we believe that his ineffective assistance claim should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify.

There is no error.

In this opinion the other judges concurred.