******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* OLES JEAN-BAPTISTE
## (AC 46260)

Bright, C. J., and Alvord and DiPentima, Js.

*Syllabus*

The defendant, who had been convicted, following a jury trial, of the crimes of larceny in the third degree, assault of public safety personnel, and interfering with an officer, appealed to this court, claiming that his sixth amendment right to counsel was violated by the trial court's alleged inadequate response to his claims of ineffective assistance of counsel during the trial. *Held* that the record was inadequate to review the defendant's claim of ineffective assistance of counsel on direct appeal to this court: the proper vehicle for the defendant to litigate his claim of ineffective assistance of counsel was a petition for a writ of habeas corpus, and this court was unable to review, on the basis of the record before it, whether defense counsel's decisions not to object to the introduction of a police officer's body camera recording or to obtain a medical expert constituted ineffective assistance, as opposed to sound trial strategy, as the record did not reflect what other defenses or courses of action defense counsel considered, what options, if any, were available to him, how he concluded that a medical expert would not be helpful, or whether a medical expert's testimony would have, in fact, been helpful to the defense; moreover, because the defendant asked this court to review two specific allegations of ineffective assistance of counsel, while maintaining that he was not waiving any other ineffective assistance of counsel claims that he might assert against his defense counsel in a later habeas corpus proceeding, a review of the defendant's claims at this stage would result in a piecemeal resolution of the defendant's ineffective assistance of counsel claims in the event that the defendant pursued additional claims in a petition for a writ of habeas corpus; furthermore, the duty the defendant sought to impose on the trial court would have required the court to make a qualitative judgment of defense counsel's performance throughout the trial proceedings, and an inquiry into defense counsel's strategy for the matter proceeding before the court risked interfering with the defendant's right to counsel and the attorney-client relationship.

Argued May 22—officially released July 16, 2024

*Procedural History*

Substitute information charging the defendant with the crimes of larceny in the third degree, assault of public safety personnel and interfering with an officer,

brought to the Superior Court in the judicial district of New London, geographical area number twenty-one, and tried to the jury before *K. Murphy, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Gary A. Mastronardi*, assigned counsel, for the appellant (defendant).

*Danielle Koch*, assistant state's attorney, with whom, on the brief, were *Paul Narducci*, state's attorney, and *Adam Scott*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Oles Jean-Baptiste, appeals from the judgment of conviction, rendered following a jury trial, of larceny in the third degree in violation of General Statutes § 53a-124 (a) (1), assault of public safety personnel in violation of General Statutes § 53a-167c (a) (1), and interfering with an officer in violation of General Statutes § 53a-167a (a). On appeal, the defendant claims that his sixth amendment right to counsel was violated by the trial court's alleged inadequate response to his claims of ineffective assistance of counsel.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the afternoon of March 2, 2020, the Norwich Police Department received a call from Kenneth Wilder reporting the theft of his pink scooter, which was missing its seat. Officer Ryan Froehlich was dispatched to investigate the theft. The dispatcher described the scooter as missing its seat and further stated that the

---

[1] In his principal appellate brief, the defendant also claimed that (1) the trial court committed plain error in allowing the state to offer into evidence an audio-video exhibit with content that was brutal, shocking, highly inflammatory, and unduly prejudicial to the defendant, and (2) there was insufficient evidence to sustain his conviction for larceny. In his reply brief, however, the defendant expressly withdrew both of those claims.

suspect would be pushing the scooter because it was not operable. Officer Froehlich set out to the dispatched location and engaged the cruiser's siren, which automatically activated his cruiser and body cameras.

While driving to the dispatched location, Officer Froehlich noticed two people on the opposite side of the street with a pink scooter that matched the description provided by dispatch. One of the individuals, Bob Rodriguez, was driving a separate scooter. At the same time, the defendant was straddling both Rodriguez' moving scooter and the pink scooter, which he was towing by controlling its handlebars. Officer Froehlich activated the cruiser's emergency lights and pulled over directly in front of them.

Rodriguez and the defendant stopped when Officer Froehlich got out of the cruiser, and they moved to the shoulder of the roadway at Officer Froehlich's request. Officer Froehlich asked the two men if the pink scooter was theirs. The defendant replied that it belonged to a friend. Because Officer Froehlich was the only officer present and the defendant was walking backward toward the wood line, Officer Froehlich asked the defendant to be seated. The defendant did not sit down and responded, "I'm not a dog." Officer Froehlich subsequently attempted to handcuff the defendant. The defendant then started actively to avoid him.

A physical struggle between the defendant and Officer Froehlich ensued. The defendant scratched, punched, and bit Officer Froehlich. Officer Froehlich struck the defendant several times and tried to tase the defendant twice but was unable to do so successfully due to the defendant's clothing. During the struggle, Sergeant Harry Formiglio arrived at the scene. Both officers were able to control the defendant's arms while waiting for other officers' assistance. The officers then handcuffed the defendant, and he went limp as the

officers were bringing him to the cruiser. Once inside the cruiser, the defendant kept his legs outside of the vehicle, and the officers used a stun gun to get his legs inside and close the door.

Officer Froehlich was taken to a hospital. There, he was treated for the injuries he sustained during the incident. In addition, Officer Froehlich was treated for asthma and potential exposure to blood-borne pathogens.

The defendant was transported by Officer Matthew Seidel, who was equipped with a body camera. As he was being transported to police headquarters, the defendant screamed at Officer Seidel. Specifically, the defendant threatened to kill Officer Seidel's family and he repeatedly described sexual acts he was going to perform on Officer Seidel and his family. Upon arriving at the police department headquarters, the officers there determined that the defendant needed medical attention.

Officer Seidel accompanied the defendant in the ambulance that transported the defendant from the police headquarters to a hospital.[2] The defendant continued yelling and making threatening remarks at the police headquarters, in the ambulance, and at the hospital.

The defendant subsequently was charged with larceny in the third degree, assault of public safety personnel, and interfering with an officer.

---

[2] At the hospital, the defendant was evaluated by a psychiatric clinician who determined that "psychiatric hospitalization" was not required. Another doctor stated that, "[a]s best as can be ascertained, there is a limited psychiatric history with some brief outpatient care and no current care." However, the doctor reported that, "[o]f note is that the patient had been drinking . . . and urine toxicology was positive for cannabinoids and cocaine, which may have exacerbated his rage."

The following procedural history is relevant to our resolution of this appeal. Attorney Richard Perry represented the defendant in the criminal proceedings. The defendant entered not guilty pleas on all charges, and the jury trial took place over the course of three days from September 7 through 9, 2022.

On the first day of evidence, before the swearing in of the jury, the defendant engaged in a discussion with the court regarding his legal representation. Specifically, he expressed his concerns about Attorney Perry during the following exchange:

"The Defendant: So, first of all, I had requested for Mr. Perry to give me a social worker, a private, because I've had bad experiences with the ones that work inside for the court. Secondly, I had asked for a private investigator. And I also asked for a private expert and he didn't give me those.

"The Court: Okay, let me take them one at [a] time. What's the purpose in getting a social worker in this case?

"The Defendant: Because I've had bad experiences with the lawyers. I just want to be able to speak to the social worker.

"The Court: Okay, what about the private investigator? What—what's—what was the purpose in having a private investigator?

"The Defendant: Judge, it's not for me only. If I'm going to trial, I want an expert, I mean, investigation that can explain what's happened. Because I want the footage from the body camera that was on the police officer. So, I want an expert. I want an investigator that could explain exactly what happened.

"The Court: Okay, all right. Attorney Perry, my understanding is that the public defender's office does have

an investigator. Do you have an investigator that's available for you if you wish?

"[Defense Counsel]: We do, Your Honor, and she did work on the case. And we do have a social worker who went to the jail last week to meet with [the defendant].

"The Court: Okay. And I don't want to get into any strategy or anything regarding this potential expert, but did you look into the issue of whether an expert would be beneficial to [the defendant] in this case?

"[Defense Counsel]: Your Honor, I did and I felt that it would not be justified.

"The Court: Okay, all right. Well, Mr. Jean-Baptiste, I hear what you're saying and you have created a record. You've protected yourself, if there's an issue down the road."

After the jury was sworn in, the prosecutor presented the testimony of three witnesses and offered into evidence several exhibits. During Officer Froehlich's testimony, the prosecutor offered into evidence a flash drive containing several audio and video recordings, including the victim's 911 call, radio interactions between officers and dispatch, cruiser camera footage, and body camera footage of several officers. Attorney Perry did not object to the exhibit, and it was admitted in full as exhibit 1.[3]

The defendant then interjected, and the court excused the jury. The defendant explained: "This lawyer that's here, when you ask him if he objects, he doesn't say anything. There's always evidence that's being presented here. He was supposed to let me see it too. I haven't seen anything yet. . . . [B]y right, this lawyer to show me all the exhibits before they're presented—

---

[3] Initially, the flash drive was admitted in full as a single exhibit, exhibit 1. Later during the trial, the contents of the flash drive were separated into exhibits 1a, 1b, 1c, and 1d.

before it's presented to the jury. Because I made a request with him before, he refused all my requests. One time again, this lawyer is . . . ineffective on the case." After engaging in a discussion with the defendant regarding courtroom procedures, the court addressed Attorney Perry:

"The Court: [The defendant] has not seen this or has not seen all of this?

"[Defense Counsel]: I don't believe he's seen this, Your Honor.

"The Court: Okay. You have seen this though?

"[Defense Counsel]: Yes.

"The Court: Okay. All right. Then, I'll ask the state to play the whole thing for—everything on there.

\* \* \*

"[The Prosecutor]: To watch every single video on the tape, it will take hours.

"The Court: Attorney Perry, was [the defendant] given the opportunity to listen and watch this video on an earlier date?

"[Defense Counsel]: Your Honor, I believe I'm the fourth attorney on this case.[4] I'm not sure what the prior attorneys did. We discussed the video and [I] don't want to get into my particular trial tactics, but I did not feel that it was necessary for him and I to go over the video. That was not part of my—my plan and I thought that had been made clear to my client. . . .

"The Defendant: . . . I've been through five lawyers already for this. He is number six. . . . I've asked . . . since March 2 to provide me the evidence.

---

[4] At that time, Attorney Perry was the sixth attorney within two and one-half years to represent the defendant.

"The Court: All right. Here's what I'm gonna do. I don't want to waste the jury's time or counsel's time. The exhibit has already been admitted as a full exhibit. The state has the opportunity to publish the exhibit to the jury. Mr. Jean-Baptiste, you will have an opportunity to review—watch the video and listen to the audio, take notes, talk to your attorney and I will, if necessary, if your attorney needs more time, if you need more time to talk to your attorney, we will take a break after the conclusion of this witness' testimony so that your attorney can prepare for a cross-examination, including examination of the exhibit." (Footnote added.)

After the jury returned, the prosecutor played the 911 call audio recording, continued his direct examination of Officer Froehlich, and published photographs of Officer Froehlich's injuries and the pink scooter, among other images, to the jury. Before adjourning for the day and after excusing the jury, the court allowed the parties to remain in the courtroom to give the defendant the opportunity to view exhibit 1.

The following day of the trial, the defendant reiterated that he had concerns with Attorney Perry. The defendant then decided that he did not want to be present for the trial and voluntarily went to the courthouse lockup for the remainder of the proceedings. After the jury returned, the prosecutor completed his direct examination of Officer Froehlich, and he played for the jury the radio calls, Officer Froehlich's cruiser camera footage, and Officer Froehlich's body camera footage. Attorney Perry then conducted his cross-examination.

The state also presented the testimony of Officer Seidel. During his direct examination of Officer Seidel, the prosecutor began playing for the jury exhibit 1d. See footnote 3 of this opinion. This exhibit contained the audio and video footage from Officer Seidel's body

camera, which recorded the entirety of his interaction with the defendant during the defendant's transportation in the cruiser to the police headquarters and his transportation in the ambulance to the hospital. Twelve minutes and fifty seconds into the video, the court instructed the prosecutor to turn off the video and excused the jury. The court expressed concern with respect to the strong language and "whether the material being provided would be considered other crimes, evidence and whether the court should be entering some type of limiting instruction or limiting the introduction of the exhibit . . . ." The court then asked the prosecutor to state the relevance of the exhibit. The prosecutor responded that the defendant's behavior as shown on the video was relevant to intent. The court then inquired of Attorney Perry whether he had any objection to the exhibit.

The following exchange occurred:

"The Court: Obviously, you've had a chance to hear this before. Is that right?

"[Defense Counsel]: That's correct, Your Honor. I did view this video earlier.

"The Court: Okay. And your—still your position is you're not objecting to the admission of this exhibit.

"[Defense Counsel]: I would like to say this, Your Honor. I agree with the court that it may not be relevant. However, I believe that this may be helpful to my client's case in that it will show that he could not form the intent to commit these crimes.

"The Court: Okay. So, at this point you're not making any motion either to exclude it or limit it or anything like that?

"[Defense Counsel]: No, Your Honor."

The jury returned, and the prosecutor resumed playing the video.[5] The prosecutor then presented the testimony of Officer Benjamin Sawaryn and introduced into evidence a series of pictures, a property receipt, part of a Norwich Police Department arrest report, and a statement of the value of the pink scooter. Defense counsel called no witnesses. During his closing argument, Attorney Perry relied on exhibit 1d in arguing: "[T]o have [the required] intent, [the defendant] would have had to have a rational thought process. And you yourselves saw the tapes that were presented yesterday and the day before. The question that you have to answer is did this person have the ability to make a decision such as that in the state that he was in. Now, that's the key element here."

The jury found the defendant guilty on all three counts. The court, *K. Murphy*, *J.*, sentenced the defendant to a total effective sentence of ten years of incarceration, execution suspended after seven years, followed by three years of probation. This appeal followed.

On appeal, the defendant claims that the court failed to "adequately inquire into defense counsel's reasons (i) for not objecting to the admissibility of [exhibit] 1d, and (ii) for failing to retain a medical expert," and, in doing so, "improperly countenanced obvious ineffective assistance of counsel and breached its duty to maintain the integrity of the judicial proceedings" in violation of the defendant's sixth amendment right to counsel. Because the defendant's claim rests on his assertion

---

[5] After Officer Seidel's testimony, the court instructed the jury: "The state has offered evidence of other acts of misconduct of the defendant. This [is] not being admitted to prove the bad character, propensity or criminal tendencies of the defendant. Such evidence is being admitted solely to show or establish the defendant's intent and to some extent the defendant's knowledge of the English language. . . ."

that Attorney Perry rendered "visible ineffective assistance," "a review of how and when ineffective assistance of counsel claims typically are addressed by our courts informs our analysis of the [defendant's] claims. A claim of ineffective assistance of counsel is more properly pursued on . . . a petition for a writ of habeas corpus rather than on direct appeal . . . [because] [t]he trial transcript seldom discloses all of the considerations of strategy that may have induced counsel to follow a particular course of action. . . . [A] habeas proceeding provides a superior forum for the review of a claim of ineffective assistance because it provides the opportunity for an evidentiary hearing in which the attorney whose conduct is challenged may testify regarding the reasons [for the challenged actions]. . . . A habeas proceeding thus enables the court to determine whether counsel's [deficiency] was due to mere incompetence or to counsel's trial strategy, which would not be possible in a direct appeal in which there is no possibility of an evidentiary hearing." (Citation omitted; internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, 225 Conn. App. 234, 244, 314 A.3d 1052 (2024).

"[O]n the rare occasions that [our Supreme Court has] addressed an ineffective assistance of counsel claim on direct appeal, [it has] limited [its] review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the *trial court*, rather than by those of his counsel. . . . [The court has] addressed such claims, moreover, only where the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development." (Emphasis in original; internal quotation marks omitted.) *State* v. *Taft*, 306 Conn. 749, 768, 51 A.3d 988 (2012).

The defendant maintains that this case presents one of those rare occasions when an ineffective assistance of counsel claim can be reviewed by this court on direct appeal. First, the defendant argues that "[t]he trial court record in this case is chock full of instances which, viewed individually or collectively, were more than adequate to 'alert' the trial judge that defense counsel was not providing effective assistance to his client." The state responds that an evidentiary proceeding would be necessary to permit review of the defendant's claim because Attorney Perry's "explanations for his trial strategy are absent" and the court could not have inquired further due to attorney-client privilege. In his reply brief, the defendant reiterates that Attorney Perry's deficient performance is so clear from the record before the trial court that further evidentiary proceedings are unnecessary. The defendant states that the trial record sufficiently exhibits both "the purported 'strategic' reason underlying [Attorney Perry's] choice not to object to the admission of [exhibit 1d]" and the "shortcomings [that] should have been 'red flags' to the trial judge which, at minimum, should have alerted the court" to Attorney Perry's lack of preparedness, particularly with respect to obtaining a medical expert.[6] We conclude that the record is inadequate to review the defendant's claim on direct appeal.

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*,

---

[6] The defendant argues that the alleged ineffective assistance of his counsel in the form of failure to present the testimony of a medical expert should have been apparent to the trial court, noting that the trial court had presided over a competency hearing during which evidence of a psychiatric disorder was presented. The defendant contends that the psychiatric testimony "could have, and should have, [been] offered—as a plausible explanation not only for the highly prejudicial content of [exhibit 1d] but also for the defendant's sudden, violent, overreactive response to the attempt by Officer Froehlich to handcuff him."

[466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may [deny] a petitioner's claim if he fails to meet either prong. . . .

"Our Supreme Court has stated that to establish deficient performance by counsel, a [petitioner] must show that, considering all of the circumstances, counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. . . . [T]here is a strong presumption in favor of concluding that counsel's performance was competent. . . . In order to overcome that presumption, *the* [*defendant*] *bears the burden* of proving that counsel's representation fell below an objective standard of reasonableness. . . . [T]he performance inquiry must be whether counsel's assistance was reasonable *considering all the circumstances*. . . . Thus, the question of whether counsel's behavior was objectively unreasonable is not only one on which the [defendant] bears the burden of proof; its resolution turns on a fact intensive inquiry." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, supra, 225 Conn. App. 246.

Furthermore, our Supreme Court has emphasized that an "ineffective assistance claim should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney

whose conduct is in question may have an opportunity to testify." *State* v. *Leecan*, 198 Conn. 517, 542, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). Relatedly, in *State* v. *Jose V.*, 157 Conn. App. 393, 116 A.3d 833, cert. denied, 317 Conn. 916, 117 A.3d 854 (2015), this court further explained that, "[a]lthough the record may reflect the actions of defense counsel during the [underlying] proceeding, we do not know all of the reasons for those actions. . . . All of the relevant circumstances are not known. Our role . . . is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. Without a hearing in which the reasons for counsel's decision may be elicited, any decision of ours . . . would be entirely speculative." (Internal quotation marks omitted.) Id., 405–406.

In the present case, the proper vehicle for the defendant to litigate his claim of ineffective assistance of counsel is a petition for a writ of habeas corpus. We cannot review, on the basis of the record before us, the claim raised in this direct appeal, which concerns whether Attorney Perry's actions, namely, his decisions not to object to exhibit 1d or obtain a medical expert, constituted ineffective assistance, as opposed to sound trial strategy. See *Banks* v. *Commissioner of Correction*, supra, 225 Conn. App. 247 (rejecting petitioner's claim that would require court to presume counsel's assistance was unreasonable, which "would be contrary to the presumption of competence"). As for Attorney Perry's decision not to object to exhibit 1d, the record is inadequate in that it contains only a brief exchange in which Attorney Perry indicated that the exhibit "may be helpful to [his] client's case" and that "it w[ould] show that [the defendant] could not form the intent to commit these crimes" and evidence of how Attorney Perry sought to implement that strategy in his closing argument. The record does not reflect what other

defenses or courses of action Attorney Perry considered or what options, if any, were available to him. Similarly, the record is inadequate to evaluate Attorney Perry's decision not to obtain a medical expert. Attorney Perry, in response to the court's inquiry, stated that he had considered whether an expert would be beneficial and "felt that it would not be justified."[7] He did not explain how he came to that conclusion. Furthermore, the record before us contains no information on whether a medical expert's testimony would have been helpful to the defense. Without an evidentiary proceeding during which the defendant and the state, or the Commissioner of Correction, would have the opportunity to present evidence and the trial court could make credibility determinations and factual findings based on that evidence, the record is inadequate to review the defendant's ineffective assistance of counsel claim. See, e.g., *State* v. *Campbell*, 328 Conn. 444, 468 n.7, 180 A.3d 882 (2018) ("[t]he defendant's ineffective assistance claim is precisely the type of collateral attack that is best resolved in a habeas action, where the defendant will have the opportunity to present evidence in support of his claim that his counsel's performance was deficient and that he was prejudiced by that deficient performance").

Furthermore, contrary to well settled law, the defendant is asking this court to review two specific allegations of ineffective assistance of counsel, while maintaining that he is not waiving any other ineffective

---

[7] Additionally, we note that, although our Supreme Court has recognized that a court may address an ineffective assistance of counsel claim where "the issue presented was a question of law, not one of fact requiring further evidentiary development"; *State* v. *Taft*, supra, 306 Conn. 768; the defendant in the present case asks this court to evaluate Attorney Perry's alleged deficient performance and strategic decisions and the trial court's response. These inquiries are fact intensive, requiring further evidentiary development. See *Banks* v. *Commissioner of Correction*, supra, 225 Conn. App. 246 (resolution of question of whether counsel's behavior was objectively unreasonable turns on fact intensive inquiry).

assistance of counsel claims that he might assert against Attorney Perry in a later habeas corpus proceeding. Consequently, reviewing the defendant's claim at this stage would result in a piecemeal resolution of the defendant's ineffective assistance of counsel claims, in the event that the defendant pursues additional claims in a petition for a writ of habeas corpus. See *State* v. *Leecan*, supra, 198 Conn. 542 (ineffective assistance of counsel claims should not be resolved in piecemeal fashion).

The defendant attempts to avoid the above precedents by arguing that he is really challenging the inaction of the trial court, as opposed to asserting a direct claim of ineffective assistance of counsel. He maintains that the trial court "was under a duty to protect both the defendant's constitutional right to counsel and the integrity of the court by inquiring into the basis for defense counsel's highly questionable decision not to object to the admissibility of exhibit 1d."[8] In *Banks* v. *Commissioner of Correction*, supra, 225 Conn. App. 238–39, the petitioner's attorney declined the opportunity to present evidence demonstrating good cause for the untimely filing of his habeas petition during a show cause hearing. On appeal, the petitioner argued that the habeas court had an obligation to intervene based on the attorney's " 'patently ineffective' " assistance. Id., 244. Specifically, "the petitioner request[ed] that we recognize a new duty for the [court] to step in whenever it appears that counsel has no strategic reason for failing to pursue a certain course of action." Id., 252. This court stated that, "[i]n the absence of any persuasive, let alone

---

[8] The defendant further contends that, "in the absence of any reasonable and competent responses by defense counsel to these critical court inquiries, the judge was required to ensure the defendant's sixth amendment right to competent counsel and was duty bound to protect the integrity of the judicial proceedings by (1) at the very least, refusing, sua sponte, to admit exhibit 1d; while (2) strongly considering, and probably actually declaring, sua sponte, a mistrial."

binding, authority to support the petitioner's contention, we decline to do so." Id.

We similarly are not persuaded by the defendant's argument in the present case. As succinctly stated by the court in *Banks*, there exists no binding nor persuasive authority supporting the defendant's claim. Id. The defendant cites several decisions of the United States Supreme Court and federal courts of appeals in arguing that a trial court has a duty to act sua sponte when the trial court is alerted to an obvious sixth amendment violation.[9] Most of the cited decisions are not applicable in that they involve conflicts of interest. "Making a qualitative judgment as to counsel's performance during the proceeding in which the alleged ineffective assistance is occurring is fundamentally different than . . . inquiring into an apparent conflict of interest . . . because evaluating counsel's performance would require that the court inquire as to counsel's strategy for the matter that is still proceeding before the court. The problem with that line of inquiry is that the trial court risks interfering with the defendant's right to counsel and the attorney-client relationship if the court asks counsel, *during trial*, for a full explanation of his

[9] Specifically, the defendant cites *Cuyler* v. *Sullivan*, 446 U.S. 335, 347, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) (asserting that duty to inquire exists when "the trial court knows or reasonably should know that a particular conflict [of interest] exists," in which case trial court should "initiate an inquiry"); *United States* v. *Sands*, 968 F.2d 1058, 1066 (10th Cir. 1992) (citing *United States* v. *McCord*, 509 F.2d 334, 352 n.65 (D.C. Cir. 1974), cert. denied, 421 U.S. 930, 95 S. Ct. 1656, 44 L. Ed. 2d 87 (1975)), cert. denied, 506 U.S. 1056, 113 S. Ct. 987, 122 L. Ed. 2d 139 (1993); *United States* v. *McCord*, supra, 352 and n.65 (finding that when claims of ineffective assistance of counsel based on existing conflict of interest "arise at trial, the better [practice] is for the trial judge to immediately conduct an inquiry into the bases for the claim if it is at all colorable"); *United States* v. *DeCoster*, 487 F.2d 1197, 1200 n.4 (D.C. Cir. 1973) (reiterating, in context of defendant's plea of guilty, that judges should strive "to maintain proper standards of performance by attorneys who are representing defendants in criminal cases" (internal quotation marks omitted)).

strategy. . . . Indeed, that is why, in circumstances in which defense counsel's [conduct] . . . constitutes a violation of the defendant's right to the effective assistance of counsel, the defendant may seek recourse through habeas corpus proceedings." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, supra, 225 Conn. App. 253.

The duty the defendant seeks to impose on the trial court would have required the court to make a qualitative judgment of Attorney Perry's performance throughout the trial proceedings. As the court noted in *Banks*, an inquiry into counsel's strategy for the matter proceeding before the court "risks interfering with the defendant's right to counsel and the attorney-client relationship . . . ." (Internal quotation marks omitted.) Id. The trial court in the present case expressly noted this concern. Accordingly, we are not persuaded by the defendant's argument that the trial court had a duty to inquire further as to Attorney Perry's courses of action with respect to a medical expert and exhibit 1d.

The judgment is affirmed.

In this opinion the other judges concurred.