## STATE OF CONNECTICUT *v.* SHIRAN LEE-RIVERAS
## (AC 30082)

DiPentima, C. J., and Gruendel and West, Js.

---

Argued March 17—officially released August 9, 2011

*John R. Gulash,* for the appellant (defendant).

*Linda Currie-Zeffiro,* assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, and *Joseph Harry,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Shiran Lee-Riveras, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (1) and assault in the first degree in violation of General Statutes § 53a-59 (a) (4). On appeal the defendant claims that (1) his due process right to a fair trial, as guaranteed by the fourteenth amendment to the United States constitution, was violated when the state elicited testimony describing his silence after he had received a *Miranda*[1] warning in violation of *Doyle* v. *Ohio,* 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), and (2) the trial court violated his sixth amendment right to confrontation when it restricted his cross-examination of the state's key witnesses. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 29, 2006, the defendant, Roberto Sanchez, Raul Pagan, Kevin Glenn and another individual, indentified only as "R-Dot," devised a plan to rob a delivery driver.[2] R-Dot, using his cell phone, placed an order for two pizzas, buffalo wings and two bottles of soda with Crossroads Pizza and requested that the order be delivered to an abandoned house at 297 Dover Street in Bridgeport. R-Dot informed the person who took his order that he would pay with a one hundred dollar bill and requested that the delivery driver bring sufficient

---

[1] See *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] We note, however, that at his first trial, a jury found the defendant not guilty of the crime of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (1).

change to accommodate his payment. Paulo Carvalho, worked as a delivery driver at Crossroads Pizza and was assigned to deliver R-Dot's order.

At approximately 8 p.m., Carvalho arrived at 297 Dover Street with the pizza order. Sanchez and Pagan were waiting for him on the porch, and the defendant, R-Dot and Glenn waited in a dark alley adjacent to the house. Sanchez informed Carvalho that the pizzas were for him but that Carvalho would need to wait to be paid because his mother was upstairs in the bathroom. Carvalho placed the heavy pizzas on the stoop, and then Sanchez pushed him off the stairs. The defendant, R-Dot and Glenn then immediately exited the alley and attacked Carvalho from behind. The defendant, R-Dot, Glenn, Sanchez and Pagan beat Carvalho and dragged him into the alley. During the assault, Glenn took Carvalho's money and another member of the group took his cell phone. Pagan took the bottles of soda. The defendant, R-Dot, Glenn, Sanchez and Pagan then retreated to Glenn's basement, where they split the money and ate the food. Carvalho managed to return to Crossroads Pizza where an ambulance was summoned, and the incident was reported to the police. Carvalho was taken to Bridgeport Hospital where he was treated for lacerations to his face, a broken nose, broken ribs and an injury to his knee that required surgery.

During the subsequent police investigation, Dennis Martinez, a detective with the robbery division of the Bridgeport police department, obtained the cell phone number of Sanchez' mother.[3] After Martinez spoke with Sanchez' father, Sanchez was brought to the police station two days after the robbery and gave a written statement to police. In his statement, Sanchez admitted to participating in the robbery of Carvalho and implicated the defendant, Glenn, R-Dot and Pagan. Six days later, Pagan gave a written statement to the police

---

[3] One week prior to this incident, Sanchez had used his mother's cell phone in the commission of the attempted robbery of another delivery driver.

admitting his participation in the crime and implicated the same parties. The defendant later was arrested and charged with one count each of robbery in the first degree in violation of § 53a-134 (a) (1), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (1) and assault in the first degree in violation of § 53a-59 (a) (4).[4]

The defendant's first trial resulted in a verdict of not guilty of conspiracy to commit robbery and a hung jury and mistrial with respect to the remaining two counts. Thereafter, the defendant was again charged with robbery in the first degree and assault in the first degree. The defendant's second trial resulted in a verdict of guilty on both counts. The court rendered judgment in accordance with the jury's verdict and sentenced the defendant to a total effective sentence of seven years incarceration followed by three years of special parole. This appeal followed.

I

The defendant first claims that his due process right to a fair trial as guaranteed by the fourteenth amendment to the United States constitution was violated when the state elicited testimony describing his post-*Miranda* silence in violation of *Doyle* v. *Ohio*, supra, 426 U.S. 610.[5] Specifically, the defendant calls our attention to four instances in the record where he claims that the state improperly elicited testimony of, or commented on, his failure to reveal his alibi to police.

[4] Sanchez and Pagan were arrested and charged as juveniles for their involvement in this robbery. Glenn was arrested and pleaded guilty under the *Alford* doctrine; see *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); however, police were never able to determine the identity of R-Dot.

[5] The defendant also claims that the state violated his right to a fair trial as protected by article first, § 8, of the Connecticut constitution. The defendant, however, has failed to set forth a separate legal analysis of his state constitutional claims. We, therefore, confine our analysis to the claims brought by the defendant under the federal constitution. See *State* v. *Diaz*, 109 Conn. App. 519, 529 n.5, 952 A.2d 124, cert. denied, 289 Conn. 930, 958 A.2d 161 (2008).

Because the defendant did not preserve his claims at trial he seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] We conclude that the defendant's right to a fair trial was not violated.

The following additional facts are necessary to resolve this claim. At trial, Martinez testified that he visited the defendant's home twice during his investigation of the robbery. The first visit ended abruptly when Martinez voiced his suspicion that the defendant was involved in the robbery. After Martinez obtained an arrest warrant for the defendant, he visited the defendant's home a second time to take him into custody. Martinez further testified that he "believe[d]" that he gave the defendant a *Miranda* warning, although the record is unclear precisely when it was given. Martinez also testified that he did not speak with the defendant again after the two encounters with him at the defendant's home.

We set forth the legal principles that guide our analysis and our standard of review. "In *Doyle* [v. *Ohio*, supra, 426 U.S. 610] . . . the United States Supreme Court held that the impeachment of a defendant through evidence of his silence following his arrest and receipt of *Miranda* warnings violates due process." (Internal quotation marks omitted.) *State* v. *Lockhart*, 298 Conn. 537, 580, 4 A.3d 1176 (2010). Likewise, our Supreme Court has "recognized that it is also fundamentally unfair and a deprivation of due process for the state to use evidence of the defendant's post-*Miranda* silence as affirmative proof of guilt . . . ." (Citations omitted.)

---

[6] Pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, a defendant "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.)

Id., 581. "*Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him." (Internal quotation marks omitted.) *State* v. *Berube*, 256 Conn. 742, 752, 775 A.2d 966 (2001). "Because it is the *Miranda* warning itself that carries with it the promise of protection . . . the prosecution's use of silence *prior* to the receipt of *Miranda* warnings does not violate due process."[7] (Emphasis added; internal quotation marks omitted.) Id., 753. Therefore, as a factual predicate to an alleged *Doyle* violation, the record must demonstrate that the defendant received a *Miranda* warning prior to the period of silence that was disclosed to the jury. See *State* v. *Leecan*, 198 Conn. 517, 531, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); see also *Fletcher* v. *Weir*, 455 U.S. 603, 605–606, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982). The defendant's claim raises a question of law over which our review is plenary. See *State* v. *Fluker*, 123 Conn. App. 355, 363, 1 A.3d 1216, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

The defendant first calls our attention to testimony that the state elicited from Martinez during direct examination in its case-in-chief.[8] After a review of the record, however, we conclude that Martinez commented only

[7] We note that for purposes of analysis under *Doyle*, a distinction exists between postarrest silence and post-*Miranda* silence. Evidence of a defendant's postarrest silence is inadmissible under principles of the law of evidence; therefore, "a defendant must seasonably object and take exception to an adverse ruling in order to obtain appellate review of his claim of error in this respect." *State* v. *Leecan*, 198 Conn. 517, 526–27, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). Pursuant to *Doyle*, however, only post-*Miranda* silence is afforded constitutional protection under the due process clause of the federal constitution. See *Fletcher* v. *Weir*, 455 U.S. 603, 607, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982); *State* v. *Leecan*, supra, 525. "*Doyle* applies whenever *Miranda* warnings have been given regardless of an arrest or custody." *State* v. *Plourde*, 208 Conn. 455, 466, 545 A.2d 1071 (1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989).

[8] The defendant calls our attention to the following colloquy between the prosecutor and Martinez on direct examination:

"[The Prosecutor]: Okay. And at any point prior to the arrest, the first time you talked to the defendant, at any point between that point, the time

on the defendant's failure to reveal his alibi to police *prior to* his arrest, and the record lacks any indication that the defendant had received a *Miranda* warning prior to his arrest.[9] See *State* v. *Leecan*, supra, 198 Conn. 524–25 (no *Doyle* violation where record lacks indication that *Miranda* warning preceded referenced

---

you came back, did the defendant or anyone else call you and say the defendant had an alibi?

"[Martinez]: No.

"[The Prosecutor]: At any point did they say, you know, give you any names or any way that you could have checked or verified his location?

"[Martinez]: No.

"[The Prosecutor]: Now, where did you go after you arrested him?

"[Martinez]: We brought him to the detective bureau, I believe, and he was brought to the police department for processing.

"[The Prosecutor]: Now, at any time did you threaten him or did you read him his *Miranda* rights?

"[Martinez]: You know, I don't even recall, I believe we did, but I don't believe we spoke to him at all again after our initial two meetings with him.

"[The Prosecutor]: Okay. And at any point did you threaten him?

"[Martinez]: No.

"[The Prosecutor]: Did you give him any opportunity to speak to you?

"[Martinez]: We gave him an opportunity to speak with us, but again, he never, like [Glenn], never spoke with us."

[9] Citing to *State* v. *Angel T.*, 292 Conn. 262, 286 n.19, 973 A.2d 1207 (2009), where, in dictum, our Supreme Court noted that "there is a division of authority as to whether the use of a defendant's prearrest silence as substantive evidence of his guilt is constitutionally permissible under the fifth amendment," the defendant claims that his fifth amendment right against self-incrimination was violated by repeated reference to his prearrest silence at trial. We are not persuaded. We note initially that neither the United States Supreme Court nor the United States Court of Appeals for the Second Circuit has addressed this issue. Furthermore, notwithstanding the observation in *Angel T.*, our Supreme Court has stated that Connecticut courts follow "the general principle that prearrest silence under circumstances where one would naturally be expected to speak may be used either as an admission or for impeachment purposes." *State* v. *Leecan*, supra, 198 Conn. 522; accord *State* v. *Walker*, 206 Conn. 300, 306, 537 A.2d 1021 (1988); see also *State* v. *Esposito*, 223 Conn. 299, 320, 613 A.2d 242 (1992) (question addressing defendant's silence "should not be allowed on retrial unless its context clearly indicates that it refers only to the defendant's *prearrest* silence" [emphasis in original]); C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 8.16.6 (b), p. 494 ("[p]re-arrest silence is admissible as an implied admission or to impeach"). Moreover, the record does not indicate that the defendant unambiguously invoked his right to remain silent. See *State* v. *Fluker*, supra, 123 Conn. App. 365–67 (analyzing whether defendant had first invoked fifth amendment right to remain silent prior to analyzing whether it was violated). We note, for example, that the defendant testified that when Martinez came to his house, he did not express his desire not to answer any of Martinez' questions; rather, he told Martinez that he didn't

silence); see also *Fletcher* v. *Weir*, supra, 455 U.S. 603. Accordingly, this claim fails under *Golding*'s first prong. See *State* v. *Berube*, supra, 256 Conn. 751.

The defendant next claims that a *Doyle* violation occurred during the state's redirect examination of Martinez.[10] Our review of the record, however, reveals that defense counsel opened the door to this line of questioning during her cross-examination of Martinez.[11] "[A]

know anything about the robbery. Accordingly, we conclude that the state's repeated reference to the defendant's prearrest and pre-*Miranda* failure to provide police with his alibi was not a violation of the defendant's fifth amendment right to remain silent.

[10] The transcript reveals the following colloquy between the prosecutor and Martinez on redirect examination.

"[The Prosecutor]: At any time from October 29, 2006, to the present date, did you ever obtain information that would have led [you to a conclusion] that the defendant was claiming an alibi?

"[Martinez]: No.

"[The Prosecutor]: Okay.

"[Martinez]: No one ever contacted us on his behalf.

"[The Prosecutor]: After arresting him, did he say, you know, I have an alibi?

"[Martinez]: No.

"[The Prosecutor]: I was somewhere else?

"[Martinez]: No, he never stated anything.

"[The Prosecutor]: Okay. I was with somebody else?

"[Martinez]: Nope."

[11] The transcript reveals the following exchange between defense counsel and Martinez during cross-examination.

"[Defense Counsel]: Okay. And were you able to have a conversation with [the defendant when you took him into custody]?

"[Martinez]: I didn't really speak to him other than to tell him that I had a warrant for his arrest and he was being arrested.

"[Defense Counsel]: So, you didn't ask him any questions?

"[Martinez]: No.

\* \* \*

"[Defense Counsel]: Okay. And did you ask [the defendant] if he had an alibi?

"[Martinez]: We, again, attempted to speak to him like we afforded everybody else—

"[Defense Counsel]: My question is did you ask him if he had an alibi?

"[Martinez]: Did I ask him? No.

"[Defense Counsel]: Okay. Did you ask him where he was that night?

"[Martinez]: He didn't want to talk to us, so me asking him any questions would have been no.

"[Defense Counsel]: My question is—

"[Martinez]: No, I didn't ask him.

"[Defense Counsel]: —did you ask him?

"[Martinez]: No.

party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject." *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986).

During her cross-examination of Martinez, defense counsel elicited testimony that the defendant had cooperated with police during their investigation and his subsequent arrest. Moreover, defense counsel asked Martinez four times whether he had asked the defendant if he had an alibi, thereby creating the impression that the defendant had failed to disclose any alibi during his arrest solely because he was not asked to do so. Thus, defense counsel sought to explain the defendant's failure to offer an alibi to police during his arrest and implied that his silence was of probative value. The state was therefore permitted to rebut this inference. Several of the United States Courts of Appeals have recognized an exception to *Doyle* when evidence of the defendant's post-*Miranda* silence is used to impeach testimony pertaining to the defendant's level of cooperation during arrest.[12] See *United States* v. *Gant*, 17 F.3d 935, 941 (7th Cir. 1994); *Stone* v. *Estelle*, 556 F.2d 1242, 1245 (5th Cir. 1977), cert. denied, 434 U.S. 1019, 98 S. Ct. 742, 54 L. Ed. 2d 767 (1978); *United States* v. *Conlin*, 551 F.2d 534, 537 (2d Cir. 1977), cert. denied, 434 U.S. 831, 98 S. Ct. 114, 54 L. Ed. 2d 91 (1977); *United States*

"[The Prosecutor]: Objection, Your Honor. He has—if the *Miranda* [warning] was given, he'd have to waive it. Counsel's going to open that door, Your Honor, then I'm going to be able to ask these questions.

"[The Court]: Well, she's asked the questions, he's given the answers, you can ask whatever you want on redirect.

"[The Prosecutor]: Thank you, thank you.

"[Defense Counsel]: So, no further attempts were made to question [the defendant]?

"[Martinez]: No."

[12] In *Doyle* v. *Ohio*, supra, 426 U.S. 619 n.11, the United States Supreme Court stated: "It goes almost without saying that the fact of postarrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest."

v. *Fairchild*, 505 F.2d 1378, 1383 (5th Cir. 1975) ("[h]aving . . . raised the question of his cooperation with the law enforcement authorities, [the defendant] opened the door to a full and not just a selective development of that subject"). Accordingly, under the circumstances of this case, we conclude that the colloquy identified by the defendant did not contain a violation of *Doyle*, and, consequently, his claim fails under *Golding*'s third prong.

Finally, we conclude that the prosecutor did not violate *Doyle* during his cross-examination of the defendant[13] or during rebuttal closing argument to the jury.[14]

---

[13] The defendant calls our attention to the following colloquy during the state's cross-examination of the defendant:

"[The Prosecutor]: Okay. Now, did you ever tell the police that you were with [Glenn] the night of the robbery?

"[The Defendant]: Yeah, not—nothing about no [Glenn]. I just told them I do not know nothing.

"[The Prosecutor]: You didn't—you didn't think to tell the police, hey, I was with somebody that night, go ask him.

"[The Defendant]: The police didn't ask me that question.

"[The Prosecutor]: No. So, they didn't ask you if you had an alibi, but now you come into court saying oh, I was with somebody, is that correct?

"[Defense Counsel]: Objection.

"[The Prosecutor]: Is that what you are saying?

"[The Defendant]: Because I know I was with somebody.

"[The Court]: Hold on a second. The objection is? The objection is what? What's your objection?

"(There was no response)

"[The Court]: Okay. The objection is withdrawn.

"[Defense Counsel]: I don't—

"[The Court]: Put your next question, please.

"[The Prosecutor]: The fact is you never told anyone about any alibi, correct?

"[The Defendant]: Like, what you mean?

"[The Prosecutor]: Where you were, who you were with. Until you've testified, you've never told anybody, correct?

"[The Defendant]: Only my lawyer."

[14] The prosecutor made the following argument during rebuttal closing argument:

"[The Prosecutor]: Now, remember this. He has an alibi. [Glenn] has an alibi; never told anyone.

"[Defense Counsel]: Objection.

"[The Court]: Objection sustained to that. They never told any police official.

"[The Prosecutor]: Any police official. Is it reasonable? You get charged with a robbery and assault. Do you think you would have said 'I was with

These claims are controlled by *State* v. *Turner*, 252 Conn. 714, 735, 751 A.2d 372 (2000), in which our Supreme Court "reject[ed] [the defendant's] argument that *Doyle* v. *Ohio*, supra, 426 U.S. 619, blocks the effort by the state to demonstrate that [the defendant's] alibi was recently fabricated." As in *Turner*, the state's questions on cross-examination and comment during rebuttal closing argument in the present case, which were very similar in substance to those made by the state in *Turner*, addressed the defendant's general failure to disclose his alibi to police, not his silence after he had been taken into custody and given a *Miranda* warning. See *State* v. *Turner*, supra, 734 n.20. Accordingly, the defendant's claims fail under the third prong of *Golding*.

## II

The defendant next claims that he is entitled to a new trial because the court improperly restricted the scope of his cross-examination of the state's two key witnesses in violation of his sixth amendment right to confrontation. We disagree.

The following additional facts are relevant to our analysis. At the defendant's second trial, the state filed two motions in limine seeking to preclude the defendant from adducing certain evidence that had been admitted at the defendant's first trial. After hearing argument from the parties, the court ruled that the defendant was not permitted to present any evidence of: (1) Sanchez' membership in a gang, which Sanchez had admitted to in his written statement to police, (2) the facts surrounding an attempted robbery of a Chinese food delivery driver that had happened at the same location one week prior to the charged crime, and that Pagan and Sanchez had admitted to committing in their written

---

her; I was with him; I was here; I was there; ask them.' Never said—'because they didn't ask me.' Well, what would be the first words out of a reasonable person's mouth if, when they get accused of something, 'I didn't do it. Here's where I was. Here's where—here's the people's names I was with.' "

statements to police, (3) Sanchez' alleged false accusation of the defendant's brother in a different juvenile matter occurring one month before the charged crime and (4) Sanchez' juvenile probation status.

The defendant claims that the court violated his sixth amendment right to confrontation by restricting his ability to impeach Sanchez and Pagan by inquiring into these areas. Having failed to advance this sixth amendment argument at trial, the defendant seeks review of his claim pursuant to *State* v. *Golding,* supra, 213 Conn. 239–40. We conclude that the defendant's sixth amendment right was not violated, and, consequently, the defendant's claim fails under *Golding*'s third prong.

We first set forth our standard of review and the legal principles that guide our discussion. "The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying." (Citations omitted; internal quotation marks omitted.) *State* v. *Colton,* 227 Conn. 231, 248–49, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). Thus, "[t]he confrontation clause . . . requires that the defendant be accorded some irreducible minimum of cross-examination into matters affecting the reliability and credibility of the state's witnesses." *State* v. *Ortiz,* 198 Conn. 220, 224, 502 A.2d 400 (1985). "[B]ecause cross-examination is the principal means by which the credibility of witnesses and the truth of their testimony is tested . . . [c]ross-examination concerning motive, interest, bias or prejudice . . . is a matter of right and may not be unduly restricted." (Citations omitted; internal

quotation marks omitted.) *State* v. *Lee*, 229 Conn. 60, 69–70, 640 A.2d 553 (1994).

"[T]he confrontation clause does not [however] suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." (Internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 9, 1 A.3d 76 (2010). "[T]rial judges retain wide latitude insofar as the [c]onfrontation [c]lause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things . . . prejudice, confusion of the issues . . . or interrogation that is . . . only marginally relevant. . . . Thus, the confrontation right is not absolute and is subject to reasonable limitation." (Citation omitted; internal quotation marks omitted.) *State* v. *Lee*, supra, 229 Conn. 70–71. "Although it is within the trial court's discretion to determine the extent of cross-examination . . . the preclusion of sufficient inquiry into *a particular matter tending to show motive, bias and interest* may result in a violation of the constitutional requirements of the sixth amendment." (Emphasis added.) *State* v. *Colton*, supra, 227 Conn. 249.

"We traditionally apply a two part analysis to determine whether a party has been deprived of effective cross-examination. First, we determine whether the defendant received the minimum opportunity for cross-examination of adverse witnesses required by the constitution." (Internal quotation marks omitted.) *State* v. *Liborio A.*, 93 Conn. App. 279, 286, 889 A.2d 821 (2006). This constitutional requirement is met if the court allows "the defendant to expose to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the

excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Swinton*, 268 Conn. 781, 833, 847 A.2d 921 (2004). "Whether limitations on impeachment, including cross-examination, are so severe as to violate the confrontation clause of the sixth amendment is a question of law reviewed de novo."[15] *State* v. *Abernathy*, 72 Conn. App. 831, 837, 806 A.2d 1139, cert. denied, 262 Conn. 924, 814 A.2d 379 (2002).

Second, if the constitutional minimum is met, we then consider whether the trial court's restriction of cross-examination amounted to an abuse of discretion under the rules of evidence. *State* v. *Liborio A.*, supra, 93 Conn. App. 286. To establish an abuse of discretion, the defendant bears the burden of demonstrating that the restrictions placed on his cross-examination were " 'clearly prejudicial,' " and we apply every reasonable presumption in favor of the court's ruling. Id., 287.

After a thorough examination of the record, we conclude that the court did not violate the defendant's sixth amendment right to confrontation. The defendant was not unduly restricted in his cross-examination of Pagan and Sanchez for purposes of establishing their motive and interest to testify favorably for the state or their prejudice and bias against the defendant. The defendant first claims that Sanchez' admitted gang membership was relevant to show that both Sanchez and Pagan had an interest in offering testimony against the defendant in order to protect other gang members who had actually participated in the robbery. As noted by the trial

---

[15] "If we conclude that the court improperly restricted the defendant's opportunity to impeach a witness for motive, interest, bias or prejudice, we then proceed with a harmless error analysis." *State* v. *Hedge*, 93 Conn. App. 693, 698, 890 A.2d 612, cert. denied, 277 Conn. 930, 896 A.2d 102 (2006).

court in its ruling, however, there was no evidence from the first trial that the robbery was gang related, nor was there any evidence that Pagan was also in the gang.[16] "A defendant . . . may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right [of confrontation] is not violated." *State* v. *Cerreta*, 260 Conn. 251, 261, 796 A.2d 1176 (2002).

The defendant next asserts that the facts surrounding the attempted robbery of the Chinese food delivery driver that Pagan and Sanchez had admitted to were also relevant to the witnesses' motive or interest because the jury would be unable to assess the magnitude of the benefit that the witnesses were receiving from the state by not being prosecuted for such a crime without understanding the severity of the crime.[17] The court, however, did allow the defendant to impeach the witnesses for motive by ruling that the defendant could ask Sanchez and Pagan if they had participated in an attempted robbery prior to the crime charged against the defendant and whether the state had prosecuted them for this crime.

The record reveals that the defendant cross-examined Sanchez on this issue and demonstrated to the jury that Sanchez had participated in an attempted robbery four days prior to the robbery of Carvalho and that the state did not prosecute him for that crime. In addition, Sanchez admitted that some of his testimony at the defendant's first trial was false and that the state had provided him with immunity from charges of perjury stemming from such untruthful testimony. Finally, Sanchez acknowledged that the robbery of Carvalho was a serious crime, one for which he had been charged

[16] Pagan did not admit to being a gang member in his statement to the police, and he denied such membership at the defendant's first trial.

[17] In the attempted robbery, Pagan allegedly stuck a knife in the delivery driver's window and attempted to stab him.

only as a youthful offender and had received a lenient sentence. The defendant did not ask Pagan if he had committed the attempted robbery or if he had been charged for doing so during her cross-examination of him. "[T]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 298 Conn. 10.

The defendant also argues that evidence that Sanchez falsely had accused the defendant's brother of an unrelated crime one month prior to the robbery in the present case showed that Sanchez was biased toward the defendant's family. As noted by the court, however, there is nothing in the record to indicate that the accusation made by Sanchez against the defendant's brother was false. To the extent that this accusation, by virtue of it being made, reveals an identifiable animosity between Sanchez and the defendant's family and, thus, is probative of a bias or prejudice, the record reveals that the defendant was able to expose any such bias or prejudice to the jury by alternate means. Sanchez testified on cross-examination that the defendant's mother "threw [him] out of [her] house." The defendant's mother corroborated this fact when she testified that Sanchez was not the defendant's friend and was not allowed in her house at the time of the robbery. The defendant's mother similarly testified that Pagan was not allowed in her house at the time of the robbery and that she had banned him from the house. Our Supreme Court has "consistently held that when an accused has had the opportunity to elicit evidence of bias, not every limitation of the right to cross-examine is of constitutional dimension." *State* v. *Lewis*, 220 Conn. 602, 621–22, 600 A.2d 1330 (1991).

Finally, the defendant claims that when Sanchez gave his written statement to the police implicating himself and the defendant, he was on juvenile probation. Thus, according to the defendant, Sanchez was motivated to become " 'locked in' " to a statement to avoid being charged with a violation of probation. A review of the record, however, reveals that Sanchez gave his written statement to the police, admitting to participating in the assault and robbery of Carvalho and the attempted robbery of another delivery driver, prior to being arrested for any crime. We fail to understand how the avoidance of a violation of juvenile probation charge could serve as motive to admit to two very serious crimes with which a person has not yet been charged with. Accordingly, the court correctly concluded that Sanchez' status on juvenile probation did not tend to show motive or interest in giving a written statement favorable to the state.

In sum, only Sanchez' allegedly false accusation of the defendant's brother was offered to establish the witnesses' motivation, interest, bias or prejudice, and this precluded field of inquiry was covered adequately by other questions. The record reveals that the defendant engaged in a thorough cross-examination of both Sanchez and Pagan and exposed to the jury the many inconsistencies between their testimony and the substance of their written statements or their testimony at the first trial. The defendant used the prior inconsistent statements of Pagan and Sanchez on multiple occasions and, similarly, refreshed their recollection with the transcripts from the defendant's first trial and their written statements. The defendant also addressed the fact that Sanchez had not told the truth during the first trial and the state had given him immunity from prosecution for perjury with respect to any contradictory testimony he gave at the second trial. Thus, the defendant had an adequate opportunity "to expose to the jury facts from

which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness[es]." (Internal quotation marks omitted.) *State* v. *Swinton*, supra, 268 Conn. 833. Accordingly, the defendant's constitutional right to confrontation was not violated. Consequently, the defendant's claim fails under *Golding*'s third prong.

Nor can we conclude that the court abused its discretion in excluding the evidence it did. The defendant has failed to carry his burden and establish that evidence of Sanchez' admitted gang membership and status on juvenile probation were probative of a material issue at trial. Moreover, the limited probative value of the facts surrounding the attempted robbery[18] was outweighed by the confusing effect the evidence could have on the jury. Finally, the court's conclusion that inquiry into Sanchez' alleged false accusation of the defendant's brother in an unrelated matter would be unduly confusing to the jury was not an abuse of discretion. The court reasoned that the evidence did not bear directly on the case and was of "marginal relevance." The court reasoned that the evidence had the potential to confuse the jury because the jury would need to resolve the issue of whether the accusation was false,

---

[18] At trial, the defendant claimed that Pagan, in his admission to the attempted robbery of the Chinese food delivery man, recounted that Glenn had helped plan the robbery and that Pagan and Sanchez retreated to Glenn's basement after the robbery failed. In the defendant's first trial both Pagan and Sanchez testified that all members of the group that committed the robbery of Carvalho also retreated to Glenn's basement, but neither Pagan nor Sanchez could describe the interior of Glenn's basement. Thus, the defendant argued that the facts of the attempted robbery were relevant to impeach the witnesses' anticipated testimony that they could not describe what Glenn's basement looked like. The court ruled that the factual details of the attempted robbery were highly prejudicial and had the potential to confuse the jury because the state was not proving the attempted robbery. We note also that Pagan's statement to police stated only that Pagan and Sanchez went to Glenn's "house" after the attempted robbery, not to Glenn's basement.

which would require a familiarity with the facts of an unrelated case involving different people that had been dismissed. Moreover, there has been an inadequate showing that this exclusion has been clearly prejudicial to the defendant. See *State* v. *Liborio A.*, supra, 93 Conn. App. 287. The defendant, consistent with his theory at trial that he would not have planned a robbery at his own home with someone who was unwelcome in his home, was able to elicit evidence that Sanchez was banned from the defendant's home by the defendant's mother. After a thorough review of the record, we conclude that the court's granting of the state's motion in limine did not constitute an abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.