******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSEPH THORPE
(SC 21004)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Convicted of murder in connection with the shooting death of the victim after unsuccessfully asserting a self-defense claim at trial, the defendant appealed to this court. The defendant, who had testified at trial, claimed that the trial court committed plain error by permitting the prosecutor to cross-examine him regarding his prearrest silence, specifically, his failure to report to the police after the murder but before being arrested that he allegedly had shot the victim in self-defense. *Held*:

The trial court did not commit plain error in permitting the prosecutor to cross-examine the defendant regarding his prearrest silence, as the relevant case law did not support the defendant's claim that the trial court's admission of his prearrest silence constituted an obvious and readily discernable error.

Argued November 3—officially released December 23, 2025

*Procedural History*

Substitute information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Schuman, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (defendant).

*Olivia M. Hally*, deputy assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Robin D. Krawczyk*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

ALEXANDER, J. A jury found the defendant, Joseph Thorpe, guilty of murder in violation of General Statutes § 53a-54a (a) in connection with the fatal shooting of

the victim, Roberto Vargas, during a drug deal in Hart-ford. On appeal, the defendant, who testified at trial that he had acted in self-defense when he shot the victim, claims that the trial court committed plain error by permitting the prosecutor to cross-examine him regarding his prearrest silence. We disagree and affirm the judgment of conviction.

The jury reasonably could have found the following facts. The defendant lived in Hartford and sold narcotics in the vicinity of Asylum Avenue and Laurel Street. Through his narcotics sales, the defendant developed contacts with other drug dealers in the area, including Triston Reid, Dariyan Hillson, and the victim. In the early morning hours of August 3, 2019, Reid asked the defendant to meet him near HFC Chicken and Pizza (restaurant) for a drug purchase. Shortly before 3 a.m., the defendant arrived on Farmington Avenue across the street from the restaurant. When the defendant approached that location, Reid was standing in a group that included Hillson, the victim, and another individual named Taki Blizzard. The defendant carried a gun in his pocket; no one else in the group was armed.

Soon after the defendant's arrival, he and the victim had a verbal altercation. The dispute escalated, and the victim attempted to punch the defendant. Before the victim landed a blow, the defendant shot him. Reid, Hillson, Blizzard, and the victim immediately ran, while the defendant continued to fire five additional shots at the victim before fleeing the scene. The victim sustained three gunshot wounds to the torso. After running a short distance, he collapsed on the corner of South Marshall Street and Farmington Avenue. He was later transported to a hospital where he died. The defendant did not report the incident to the police.

Following an investigation, the defendant was arrested and charged with murder. The case was tried to a jury.

At trial, the defendant testified that he had shot the victim in self-defense. During direct examination, the defendant testified that, on the day of the shooting, he had argued with the victim over payment for drugs. He told the jury that the argument ended when the victim pulled a gun from his hoodie and "cock[ed] it back" to shoot the defendant,[1] causing the defendant to act in self-defense by firing first.[2]

Prior to cross-examining the defendant, the prosecutor asked the trial court, outside the presence of the jury, whether she could "ask [the defendant] why he didn't report [to the police] the fact that he had fired in self-defense." The prosecutor cited *State* v. *Leecan*, 198 Conn. 517, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986), *State* v. *Ervin B.*, 202 Conn. App. 1, 243 A.3d 799 (2020), and *State* v. *Lee-Riveras*, 130 Conn. App. 607, 23 A.3d 1269, cert. denied, 302 Conn. 937, 28 A.3d 992 (2011), in support of her argument that the law permitted this inquiry into the defendant's prearrest silence. Defense counsel objected on the ground that the question was outside the scope of the direct examination of the defendant. The trial court overruled that objection. Defense counsel then argued that the defendant had "an absolute right to silence" and that "[h]e [did not] have to report anything." After taking a recess to review the cases

---

[1] This testimony contradicted that of Reid and Hillson, who both testified that the victim was not carrying a gun on the day of the shooting. There was no gun found on the victim or near the location where he collapsed.

[2] The defendant testified: "[The victim] turned to his side and pulled his gun, and he went to . . . cock it back, and that's when I pulled out the gun and shot him.

\* \* \*

"[H]e turned, he cocked it . . . cock[ed] the gun. . . . I was afraid. He . . . pulled a gun out, I was afraid. So, I shot him."

The defendant further testified concerning why he fled the scene: "I didn't think I shot him, and . . . once I stopped shooting, I couldn't—I ran. I couldn't do nothing but run. . . . I was afraid . . . that [the victim] . . . might start shooting."

cited by the prosecutor, as well as an additional case, *State* v. *Angel T.*, 292 Conn. 262, 286 and n.19, 973 A.2d 1207 (2009), the trial court permitted the prosecutor to cross-examine the defendant regarding his prearrest silence. The trial court provided three reasons for its ruling: (1) "the defendant, by taking the [witness] stand . . . waive[d] his fifth amendment right to silence"; (2) "the failure to report self-defense is presumptively conduct that's inconsistent with a claim of self-defense or with innocence [and is] essentially an admission by silence [in] circumstances [in which] one would naturally be expected to speak"; and (3) the cross-examination would be limited to prearrest silence "so that there's no ambiguity stemming from the issuance of *Miranda*[3] warnings, which . . . advise the defendant that he [has] a right to remain silent." (Footnote added.) No further objections were made.

The following colloquy, which is at the center of the defendant's claim in this appeal, then occurred during cross-examination:

"[The Prosecutor]: Now, after you shot, supposedly in self-defense . . . did you call 911?

"[The Defendant]: No.

"[The Prosecutor]: Did you stay on the scene and tell anybody what happened?

"[The Defendant]: No, I left.

"[The Prosecutor]: Did you call the police later and say, someone pulled a gun on me?

"[The Defendant]: No.

"[The Prosecutor]: Did you tell anyone that [you] had to act in self-defense because . . . [you were] afraid for [your] life?

---

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

"[The Defendant]: I told my parents.

"[The Prosecutor]: Well, you told your parents, or you told your parents you didn't actually do anything?

"[The Defendant]: No . . . I told my parents . . . the whole situation.

"[The Prosecutor]: Did you tell [your girlfriend] that you didn't do anything?

"[The Defendant]: I didn't tell nobody but my parents.

"[The Prosecutor]: I'm sorry?

"[The Defendant]: I didn't tell anybody but my parents.

"[The Prosecutor]: But your parents? Okay. And is your girlfriend Rolesha?

"[The Defendant]: Yes.

"[The Prosecutor]: And did you tell [your girlfriend] that . . . we're trying to say that was you on the video, but the video is not you?

"[The Defendant]: I don't recall.

"[The Prosecutor]: Did you tell [your girlfriend] that . . . '[t]hey're saying I did it, they're trying to, but I ain't do shit?'

"[The Defendant]: I can't recall."

The jury subsequently found the defendant guilty of murder.[4] The trial court rendered judgment in accordance with the jury's verdict and sentenced the defendant to fifty years of imprisonment. This direct appeal followed. See General Statutes § 51-199 (b) (3).

On appeal, the defendant claims that the trial court abused its discretion by permitting the prosecutor to

---

[4] After the state rested its case, defense counsel moved for a judgment of acquittal. The trial court denied that motion.

cross-examine him about his prearrest silence, namely, his failure to report to the police that he had shot the victim in self-defense. He contends that this case lacked the "key fact" necessary to support this line of questioning because he "was never in a situation [in which] he remained silent when a response was naturally called for." The defendant concedes that this claim is unpreserved and is not of constitutional dimension, which would allow review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). He instead seeks reversal under the plain error doctrine.

"[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . It is axiomatic that [t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. . . . Put another way, plain error review is reserved for only the most egregious errors. . . . [I]t is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal. . . .

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of

its consequences in order to determine whether reversal under the plain error doctrine is appropriate. . . . Thus, we employ a two-pronged test to determine whether plain error has occurred: the defendant must establish that (1) there was an obvious and readily discernable error, and (2) that error was so harmful or prejudicial that it resulted in manifest injustice." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Kyle A.*, 348 Conn. 437, 445–46, 307 A.3d 249 (2024). Our review "with respect to whether to reverse a trial court's judgment under the plain error doctrine is plenary." Id., 446.

We begin with the first prong of the plain error analysis, which asks whether admitting evidence of the defendant's prearrest silence during cross-examination is an "obvious and readily discernable error . . . ." (Internal quotation marks omitted.) Id. It is well-settled that, under *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), "the impeachment of a defendant through evidence of his silence following his arrest and receipt of *Miranda* warnings violates due process." *State* v. *Patrick M.*, 344 Conn. 565, 582, 280 A.3d 461 (2022). Silence under these circumstances is "insolubly ambiguous"; (internal quotation marks omitted) *State* v. *Lockhart*, 298 Conn. 537, 580, 4 A.3d 1176 (2010); and, although "*Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit . . . . [I]t [therefore] would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach [him] . . . ." (Internal quotation marks omitted.) Id., 580–81; see also *State* v. *Plourde*, 208 Conn. 455, 466–67, 545 A.2d 1071 (1988) (extending *Doyle* to use of defendant's silence after receipt of *Miranda* warnings but prior to arrest), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989).

The use of a defendant's prearrest and pre-*Miranda* silence, by contrast, does not present the same constitutional concerns. *State* v. *Patrick M.*, supra, 344 Conn. 583; see, e.g., *Jenkins* v. *Anderson*, 447 U.S. 231, 240, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980) ("impeachment by use of prearrest silence does not violate the [f]ourteenth [a]mendment [to the United States constitution]" when "[t]he [silence] occurred before the [defendant] was taken into custody and given *Miranda* warnings"); *State* v. *Angel T.*, supra, 292 Conn. 286 n.19 ("evidence of prearrest, and specifically pre-*Miranda*, silence is admissible to impeach the testimony of a defendant who testifies at trial, [because] the rule of *Doyle* . . . is predicated on the defendant's reliance on the implicit promise of the *Miranda* warnings"); *State* v. *Esposito*, 223 Conn. 299, 319, 613 A.2d 242 (1992) ("[b]ecause it is the *Miranda* warning itself that carries with it the promise of protection . . . the prosecution's use of silence prior to the receipt of *Miranda* warnings does not violate due process"). Accordingly, prearrest "silence under circumstances [in which] one would naturally be expected to speak may be used either as an admission or for impeachment purposes." *State* v. *Leecan*, supra, 198 Conn. 522; see *State* v. *Angel T.*, supra, 286 n.19.

On appeal, the defendant does not cite any authority to support his claim that the circumstances presented by this case are, as a matter of law, one in which a person would not be naturally expected to speak. Instead, he attempts to distinguish several federal and Connecticut cases[5] from the present case to advance his contention that the admission of his prearrest silence

---

[5] See *Brecht* v. *Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); *State* v. *Angel T.*, supra, 292 Conn. 262; *State* v. *Leecan*, supra, 198 Conn. 517; *State* v. *Ervin B.*, supra, 202 Conn. App. 1; *State* v. *Reddick*, 174 Conn. App. 536, 166 A.3d 754, cert. denied, 327 Conn. 921, 171 A.3d 58 (2017), cert. denied, 583 U.S. 1135, 138 S. Ct. 1027, 200 L. Ed. 2d 285 (2018); *State* v. *Lee-Riveras*, supra, 130 Conn. App. 607; *State* v. *Boone*, 15 Conn. App. 34, 544 A.2d 217, cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988).

constituted an "obvious and readily discernable error . . . ." (Internal quotation marks omitted.) *State* v. *Kyle A.*, supra, 348 Conn. 446. The defendant argues that, unlike the defendants in those cases, he was not naturally expected to speak to the police because he had fled the scene of an illegal drug transaction, feared that the victim was still a threat to his life, and was not questioned by the police prior to his arrest. Although we agree that this case presents some factual distinctions from the cases on which the trial court relied in support of its decision to admit evidence of the defendant's prearrest silence, we are not persuaded that those differences are significant enough that the admission of the defendant's prearrest silence constituted plain error. In other words, the relevant case law does not provide enough support for the defendant's claim so as to compel a conclusion that the trial court committed an obvious and egregious error.

We find the Appellate Court's decision in *State* v. *Boone*, 15 Conn. App. 34, 544 A.2d 217, cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988), especially instructive. In *Boone*, the defendant asserted a claim of self-defense at his trial for assault in the first degree. Id., 41. At trial, the defendant testified that the victim struck him with a crowbar and that, to resist further attack, he stabbed the victim. Id., 41–42. During cross-examination, the defendant testified that he had fled the scene when the police arrived, never reported the incident, and never sought medical treatment for the injuries he had suffered from the victim's assault. Id., 42. The defendant challenged the cross-examination on appeal, and the Appellate Court concluded that, "[i]nsofar as the state . . . used the defendant's prearrest silence to impeach the credibility of his self-defense claim, there is no error." Id., 43. For purposes of our plain error analysis, we see no meaningful difference between

*Boone* and the present case.[6] Like in *Boone*, the defendant here fled the scene of the crime and did not report the incident to the police, but claimed self-defense at trial and was subsequently cross-examined about his failure to inform the police that he was acting to defend himself.[7]

In light of the established case law on the issue, we conclude that the defendant has not "met his burden of establishing a most egregious error warranting reversal of his conviction."[8] (Internal quotation marks omit-

[6] The defendant argues that *Boone* is the "closest [case] to this one . . . ." He seeks to distinguish the present case from *Boone* by arguing that, unlike here, the defendant in *Boone* alleged that he had been injured by the victim and that, prior to the stabbing, he warned the victim that he would call the police. See *State* v. *Boone*, supra, 15 Conn. App. 41–42. We are not persuaded that these differences render the present case sufficiently distinct from *Boone* so as to warrant a finding of plain error.

[7] In addition to *Boone*, several other cases relied on by the defendant support our conclusion that the admission of his prearrest silence was not an egregious error requiring reversal. See, e.g., *State* v. *Reddick*, 174 Conn. App. 536, 545, 556–57, 166 A.3d 754 (there was no error when prosecutor commented at trial on defendant's failure to inform police officer during prearrest interview that he had shot victim in self-defense), cert. denied, 327 Conn. 921, 171 A.3d 58 (2017), cert. denied, 583 U.S. 1135, 138 S. Ct. 1027, 200 L. Ed. 2d 285 (2018); *State* v. *Lee-Riveras*, supra, 130 Conn. App. 613–15 (claimed *Doyle* violation for prosecutor's comment on defendant's prearrest failure to reveal alibi to police was not of constitutional dimension and failed under *Golding*'s first prong); see also *Brecht* v. *Abrahamson*, 507 U.S. 619, 628, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (concluding that it was proper for prosecutor to impeach petitioner through evidence that he had failed to report shooting because, "if the shooting was an accident, [the] petitioner had every reason—including to clear his name and [to] preserve evidence supporting his version of the events—to offer his account immediately following the shooting"); *State* v. *Leecan*, supra, 198 Conn. 523 (trial court's admission of defendant's prearrest silence was not plain error "because, if [an] objection had been raised, the state would have had an opportunity to supplement the foundation . . . for the admission of such evidence").

[8] Because we conclude that the trial court did not commit "an obvious and readily discernable error"; (internal quotation marks omitted) *State* v. *Kyle A.*, supra, 348 Conn. 446; we need not reach the second prong of the plain error analysis. See, e.g., *State* v. *Blaine*, 334 Conn. 298, 313 n.5, 221 A.3d 798 (2019).

ted.) *State* v. *Vickers*, 228 Conn. App. 830, 852, 326 A.3d 287, cert. denied, 350 Conn. 930, 326 A.3d 556 (2024). Accordingly, the trial court's admission of the defendant's prearrest silence was not plain error.

The judgment is affirmed.

In this opinion the other justices concurred.